Brewer *v.* Tennessee Coal, Etc., Co.

(*Knoxville.* November 13, 1896.)

MASTER AND SERVANT. *Master not liable for servant's injury, when.*

A servant injured by falling from a defective elevated walkway used in the course of his employment cannot recover against the master for his injuries, where the defects of the walkway, caused by the wear of long use, were plain and obvious, requiring no special or expert skill to detect them, and were equally within the observation and knowledge of both parties, although the servant had notified the master of the existence of the defects and obtained from him an indefinite promise to repair them, which, however, did not afford the inducement for his remaining in the service.

Cases cited and approved: Railroad *v.* Smith, 9 Lea, 685; Telephone Co. *v.* Loomis, 87 Tenn., 504.

FROM MARION.

Appeal in error from Circuit Court of Marion County. John A. Moon, J.

M. M. Allison for Brewer.

W. D. Spears and Bright & Cooke for Tennessee Coal, etc., Co.

Snodgrass, Ch. J. The plaintiff in error sued the defendant for damages, and filed a declaration

in which he set forth his cause of action as follows: "The plaintiff, Lewis Brewer, sues the defendant, for $5,000 damages, for that on or about February 4, 1894, defendant was, and still is, owning, managing, and controlling a certain iron furnace at South Pittsburg, Marion County, Tenn., and having in its employ many agents and servants; and that while plaintiff was in the employ of said defendant on said day and date, in said county, engaged in handling cars, setting brakes, and looking after switches, it became his duty to get upon cars loaded with coal and iron ore and run them down grade into the stock house, to be unloaded. It then became plaintiff's duty to dismount said cars, applying the brakes and stopping said cars at a point in said stock house where all cars loaded with ore were directed by defendant to be stopped and unloaded, and there change the switch through which said cars had passed so as to prevent accidents from other cars colliding with them. It was plaintiff's duty to stop all cars loaded with ore at a certain point in said stock house, on a trestle about twenty-five or thirty feet above the floor of said stock house. In the construction of this trestle it had become necessary, and the defendant had caused a piece of timber about eighteen inches wide and six inches thick to be placed parallel with and between the tracks on said trestle, for their servants and employees to walk on and dismount from said cars; but while plaintiff was in the discharge of his duty, and without fault or negligence on his part,

but on account of and because the defendant had wrongfully, negligently, and carelessly allowed said plank to become worn off by unloading iron ore on it until it was not more than two or three inches wide on top, and defective, unsafe, and unfit for their servants to dismount or walk on; the defendant was notified by the plaintiff and others, shortly before the accident, of the defective condition of this walkway, when defendant, by its agent, promised to replace it with a safe and suitable piece of timber, and ordered plaintiff to continue the work, which plaintiff did rather than lose his job, relying upon the express promise of defendant to repair the walkway, which it had failed to do, and whereby, on account of which negligence, plaintiff, while in the discharge of his duty, and without fault on his part, exercising all ordinary care and prudence in dismounting said cars on this defective and insufficient walkway, in said county, on February 4, 1894, about two o'clock in the afternoon, attempted to step from the car to said walkway, the safest and only way to dismount said cars at this point, but on account of the carelessness and recklessness and negligence of this defendant in allowing this wornout and defective plank to remain after it had notice of said defects, and having promised to replace the same, plaintiff's foot slipped, without fault on his part, and he fell through the trestle onto the iron ore below, a distance of about twenty-five or thirty feet, breaking his left arm at the wrist, bursting

his left knee-cap, and otherwise injuring and bruising him, causing him not only great pain, but to be put to considerable expense in procuring medical and surgical aid, and causing him to be permanently injured, wherefore he comes and sues the defendant for $5,000, and demands a jury to try the case."

This declaration was demurred to, on the ground that it averred knowledge of the plaintiff as to the defect, and that the plank, whose weak condition was described as known, was not such a piece of machinery or such material as required skill or care in the knowledge of its condition and use, and that plaintiff did not aver that the master had superior knowledge to himself, and that plaintiff shows the condition of the plank was perfectly known to himself; that the danger was so apparent and of such character that to remain in the employment of the defendant, and to continue to discharge his duties and to use such walkway was, upon the averment of the declaration, an act of rashness, and no prudent man would commit and take such risk under such circumstances, and that the promise to repair, indefinite as to time, did not aid the averments, and that, therefore, the declaration stated no cause of action. This demurrer was sustained and the suit dismissed. Plaintiff appealed, and assigned errors.

It will be noticed that the declaration does not aver a defect in the walkway used, any more apparent to the master than to the servant himself, or one which required special or expert skill to detect.

It was a plain and obvious defect, equally within the observation and the knowledge of both. It is also to be observed that there is no averment that the plaintiff was led to continue his services with the company on account of promise to repair, but only that he did not decline to work because of fear of losing his job, and that he did continue it relying upon the express promise of defendant to repair the walkway. It is further to be noticed that there was no promise to repair in any given time, nor is it averred how long before the accident had the promise been made. The true rule on that subject is thus stated by Mr. Bailey in his work on "The Master's Liability for Injuries to Servant," p. 208:

"It must appear that the servant was led to continue the employment by the master's promise that the defect complained of should be removed. Where the servant does not complain upon his own account, and continues in the employment with full knowledge of the risk, he cannot recover of the master because the latter, when the defective condition is called to his attention by the servant, gives assurances, which do not induce the servant to remain, that the defect should be remedied. And, ordinarily, whether the servant had waived the neglect of the master, and assumed the risk after promise of repair, is a question for the jury. Yet, it may have been given for such a length of time, or with such conditions, that

the Court can determine, as matter of law, that its performance has been waived.

"In cases where persons are employed in the performance of ordinary labor, in which no machinery is used and no materials furnished, the use of which requires the exercise of great skill and care, it can scarcely be claimed that a defective instrument or tool furnished by the master, of which the employee has full knowledge and comprehension, can be regarded as making out a case of liability. A common laborer who uses agricultural implements while at work upon a farm or garden, or one who is employed in any service not requiring great skill or judgment, and who uses the ordinary tools employed in such work, to which he is accustomed and in regard to which he has perfect knowledge, can hardly be said to have a claim against his employer if, in using a utensil which he knows to be defective, he is accidentally injured. It does not rest with the servant to say that the master has superior knowledge, and has, therefore, imposed upon him. He fully comprehends that the instrument which he employs is not perfect, and, if he is injured, it is by reason of his own fault and negligence. The fact that he notifies the master of the defect, and asks for another implement, and the master promises to furnish the same, does not render the master responsible if an accident occurs. A rule imposing such a liability in such a case would be far reaching, and would extend the principle

that it is the duty of the master to the servant, and the implied contract between them, that the master shall furnish proper, perfect, and adequate machinery or other materials and appliances necessary for the proposed work, to many. of the vocations of life for which it was never intended. The rule is one of just and salutary character, designed for the benefit of those engaged in work where machinery and materials are used of which they can have but little knowledge, and not for those engaged in ordinary labor, which only requires the use of implements with which they are entirely familiar.

"It was accordingly held that defects in a ladder used by the employees was not within the general rule, and that the promise to repair such implements, and those of like character and purpose, did not affect the master. . . .

"When there has been a promise to repair or obviate defects, and the servant has received an injury, after such promise, caused by the defect, the question then becomes one of ordinary care on the part of the employee, whether, relying upon such inducement held out by the employer, a prudent workman would take the risk, as well as whether there were reasonable grounds, at the time of the injury, for expecting the employer would remove the defects.

"The language of some of the cases would seem to warrant the conclusion that a promise to repair

on the part of the master was, in effect, a guaranty on his part to indemnify the servant against injury while he continued in the employment exposed to the known peril. I think—and such is the result of the great majority of the cases—that ordinarily it is a question for the jury, though sometimes for the Court.

"Relying upon such inducement held out by his employer, the most prudent workman will sometimes take risks, not merely on account of his own necessities, but in consideration of his employer's, whose interests require his continued services. Yet a danger may be so apparent, and of such character, even with the exercise of great prudence, where injury is more than ordinarily likely to result from continued service, that it would be deemed an act of utter rashness to remain. In such a case, it would seem that something more than a mere promise to repair, indefinite as to time, must appear, in order to constitute a contract of absolute indemnity against injury; that the true principle is, that the knowledge of the danger arising from the defect, and the promise on the part of the employer to repair, are taken into consideration by the jury, in connection with all the circumstances of the case, in determining whether the plaintiff was guilty of any ordinary want of care. These views seem to be sustained by the Court in *Union Manufacturing Co.* v. *Morrissey*, 40 Ohio St., 150."

Our cases, so far as they have gone, are in accord

(*Railroad Co.* v. *Smith*, 9 Lea, 685; *Telephone Co.* v. *Loomis*, 3 Pick., 504), both holding that the exercise of ordinary care is essential on the part of the servant, and that the master cannot be charged with his imprudence and rashness; neither, however, involved the doctrine of protest against the use of defective tools or machinery, and neither are they intended, nor is this, to hold that in doubtful conditions, or in a case where the servant has the right to rely upon the superior judgment of the master, the master might not be held liable; but in plain cases, as averred in the declaration, of a defect perfectly known to both servant and master, and where it is rashness to use the walkway, the servant cannot put upon the master a liability for its use upon an indefinite promise of repair. If the plank was eighteen inches wide, and had been worn until it was but two or three inches, as averred, it is clear that whatever danger might have existed in its use was perfectly apparent, and, therefore, one who used it must take the risk.

Judgment of the Circuit Court is affirmed.