---
Railroad *v.* Wright.
---

RAILROAD *v.* WRIGHT.

(*Knoxville.*　November 6, 1897.)

1. MASTER AND SERVANT. *Notice to master of recklessness of fellow-servant.*

　Knowledge acquired by a conductor in charge of a train of specific acts of recklessness or misconduct of the engineer, is notice thereof to the company, as the conductor is the immediate superior of the engineer, even though he has no authority to employ or discharge him. (*Post, pp. 57–63.*)

　Cases cited and approved: Railroad *v.* Spence, 93 Tenn., 173; Railroad *v.* Kenley, 92 Tenn., 209; 59 N. Y., 359; 38 Ind., 294; 55 N. Y., 579.

2. CHARGE OF COURT. *Erroneous, but not reversible as to master's negligence.*

　An erroneous instruction that notice to the master mechanic of the incompetency of an engineer is notice to the railroad company, affords no cause for reversal of a judgment for personal injuries sustained by a brakeman on account of the negligence of the engineer, when there was no proof that the master mechanic had any notice of such incompetency. (*Post, pp. 63, 64.*)

---
FROM COCKE.
---

Appeal in error from the Circuit Court of Cocke County.　W. R. HICKS, J.

SHIELDS & MOUNTCASTLE and G. W. GORRELL for Railroad.

W. J. McSWEEN and T. L. CARTY for Wright.

McALISTER, J.   The defendant in error recovered a verdict and judgment, in the Circuit Court of Cocke County, against the railroad company for the sum of $1,500, damages for personal injuries. The company appealed, and has assigned errors.

The defendant in error, at the time of the injury, was in the employment of the company in the capacity of brakeman, and sustained the injuries at Swatzell's switch by getting his arm caught between the deadwoods of two freight cars while in the act of coupling them.

The first count in the declaration alleges that the injuries were sustained in consequence of the failure of the company to provide safe and suitable deadwoods, drawheads and attachments, and coupling links and pins for two cars, between which the plaintiff's arm was crushed, as aforesaid.

The third count alleges that the engineer employed by defendant wrongfully, negligently, and unskillfully propelled two freight cars together, and that thereby plaintiff's arm was crushed, and he alleges that defendant company is liable because of its negligence in the selection of the said engineer; that he was reckless, negligent, and incompetent, and that this was known to the defendant, and that it wrongfully retained said engineer after his recklessness, negligence, and incompetency were discovered, and did not exercise proper care not to expose plaintiff to the risk of being associated with the said engineer.

The facts, briefly stated, are that freight train No. 49, upon which plaintiff was brakeman, was made up at Paint Rock, on the line between North Carolina and Tennessee. It was the duty of the yardmaster and car inspectors to examine the train, and, if any defects were discovered, to apprise the conductor of that fact by a suitable mark upon the car. It further appears that it was the duty of the conductor, before the train was moved from Paint Rock, to examine the cars and remove any car upon which a bad order mark appeared. When the train reached Swatzell's switch the crew was ordered by the conductor to cut out two cars and place them on the side track. Tobe Wright, the defendant in error, being the middle brakeman of the train, was required to perform the uncoupling and recoupling of the train necessary to cut out the two cars. He also worked the switch, and gave the initial signals to the engineer to move the cars forward or backward as might be necessary to accomplish the uncoupling. It appears that after the two cars had been placed on the side track, the defendant in error, for the purpose of recoupling the detached portions of the train, went to the front section, which was then moving backward, and, taking a link and pin out of the drawhead of a coal car, undertook to adjust them in position in the drawhead of another coal car attached to the rear section, which was stationary. While the defendant in error was in this position, there is evidence tending to show

that the front part of the train was backed rapidly and violently, and his arm was caught between the deadwoods of the two cars and crushed.

There was evidence tending to show that the drawhead of the car from which plaintiff had taken the coupling link and pin was defective by reason of the fact that the iron bar, or stirrup, which is placed beneath the drawhead to hold it in position, had become loose, thus permitting the drawhead to become displaced, and instead of striking the drawhead of the other car level, or face to face, it passed under it, breaking the link in two places, bending the pin, and crushing plaintiff's arm.

There is evidence tending to show that the engineer ignored the stop signal given him by the defendant in error, and that instead of stopping the moving part of the train, in order that Wright might safely adjust the link in the Hinson self-coupler, the said engineer, suddenly and without warning, backed his engine so violently that when it struck the stationary section of the train the latter was "kicked" up grade for a distance of ten or fifteen feet. It is also shown that a short time before the accident the said engineer became offended at defendant in error, cursed and abused him.

There was also evidence tending to show that said engineer disliked switching, and that when it became necessary to cut out cars and set them on a siding he would fly into a passion; that at such times he became perfectly reckless and utterly indifferent to

the safety of his brakemen. It is shown that on one occasion he became angered at a brakeman named Will Moore and mashed him between two cars; that on another occasion he mashed Charles Worley at Hodge's side track. There was proof that his reputation was that of a dangerous engineer for a brakeman to be associated with while coupling cars. It was also shown that he had been suspended from three to six times by the superintendent, and that he was frequently before said officer to answer charges of misconduct. He was finally discharged in 1896. It is not shown that Wright had knowledge of the reckless and dangerous character of this engineer. Defendant in error had only been associated with him a few times when he sustained the injuries.

The first assignment is that the Court erred in admitting evidence of specific acts of negligence, recklessness and misconduct of the engineer, Lon Robinson, while in charge of his engine, without proof that said acts had been communicated to the company before the injury to the plaintiff. There was evidence tending to show that these specific acts were known to at least four of the company's conductors who had been associated with said engineer, and whose negligence and misconduct had come under their immediate observation.

Knowledge acquired by a conductor in charge of a train touching the recklessness or misconduct of the engineer is notice to the company, since the conductor is the immediate superior of the en-

---
Railroad *v.* Wright.
---

gineer and represents the company while in charge of the train. *Illinois Central R. R.* v. *Spence*, 9 Pickle, 173; *Railroad* v. *Kenly*, 8 Pickle, 209, 210. In the latter case, the alleged negligence of the company was in failing to provide its car with a safe "foot-rest" and "hand-hold," to enable the brakemen to ascend to the top of car. The evidence showed the brakeman had complained to the conductor about these defective appliances, and the latter promised that the defects would be remedied. It was objected that notice to the conductor was not notice to the company, since the conductors had no power or agency in the construction or repairing of cars. The Court held "that notice to the company was imputed by the notice or complaint made to the conductor. That the conductor was not himself authorized to make the repairs or alterations, was no valid objection. The conductor was the immediate superior of the plaintiff, and his assurance that the matter would be remedied is, in law, to be imputed to the master. As the vice principal in charge of this train, and as to the crew operating the train, notice to him was notice to the master," etc.

In the present cause, knowledge of the recklessness and misconduct of the engineer, acquired by conductors in charge of trains on other occasions, was notice to the company, and this is so despite the fact that a conductor has no authority to employ or discharge an engineer. "The general rule is firmly established that, if a master is wanting in

proper care in the selection of servants, and knowingly or negligently employs or retains in his service those who are unfit or incompetent for the duties to which they are assigned, he is liable to respond to other employes and servants engaged in the same service who may sustain damage by reason of such incompetency and unfitness. It is equally well settled that when reasonable precautions and efforts to procure safe and suitable servants are used, and, without fault, one is employed through whose incompetency damage occurs to a fellow-servant, the master is not liable.'' *Banlec* v. *N. Y. & Harlem R. R. Co.*, 59 N. Y., 359.

In *Pittsburg, F. W. & Ch. R. Co.* v. *Ruby*, 38 Ind., 294, the Court held that for the purpose of showing that the officers of a railroad company did not exercise due care, prudence, and caution in the employment of, or in retaining in service careful, prudent, and skillful persons to manage and operate its road, and for the purpose of charging such corporation with notice of the incompetency of its employes, specific acts of negligence or unskillfulness of such employes may be proved. In that case the conductor, through whose gross negligence, carelessness, and want of attention in leaving a switch unadjusted, and thereby causing a collision, and consequent injury to plaintiff, was proved to have carelessly and negligently, about a year before, left a switch open, by which a train was thrown from the track; and a short time before the injury to plain-

tiff, and the same fall, to have been guilty of gross
negligence in disobeying orders to wait at a given
station for a train passing east, and in signaling the
engineer to go on after he had ordered down brakes,
from which facts and circumstances the jury found
that the conductor was a careless and unfit person
for that position.

Says Mr. Wharton, in his work on Negligence,
Section 238: "Such acts of negligence, on the part
of such employe, are proper articles of evidence, it
appearing that the acts were known, or should have
been known, to the employer or his agents in chief.
But unless the master has notice, or ought to have
taken notice, of the servant's misconduct or deterio-
ration, his retention is not imputable as negligence
to the master." *Chapman* v. *Railroad*, 55 N. Y.,
579; *Banlec* v. *Railroad*, 59 *Ib.*, 356; McKinney on
Fellow-servants, Sec. 91.

The second assignment is that the Court erred in
the following instruction to the jury, to wit: "If
you find the engineer incompetent, then to warrant
you in finding for the plaintiff on this ground, you
must further find that the fact of his incompetency
was brought home to the knowledge of defendant's
servants, who had the right to discharge the engi-
neer, and by this, gentlemen, I instruct you that
these would be the master mechanic, the superin-
tendent, and conductor of its trains." This instruc-
tion is erroneous, but it is not such error as calls
for a reversal of the case at the instance of the

company. The error committed by the Court is rather in favor of the company and against the defendant in error. It was not necessary, as we have already stated, that notice of incompetency of engineer should have been acquired by an officer of the company who was empowered to discharge the engineer. Knowledge of such fact, acquired by the conductor while in charge of the train and representing the company, was sufficient notice to the company. It was not necessary, therefore, that such knowledge should have been brought home directly to the superintendent. It was not insisted by counsel for defendant in error that notice to the master mechanic was sufficient, nor was there any evidence to support such a theory. It is obvious, therefore, that the instruction given by the Court in respect of notice to the master mechanic, while erroneous, was perfectly innocuous, and therefore not reversible. The judgment is affirmed.