## CORBETT *v.* SMITH & CO.

### (*Knoxville.* October 15, 1898.)

1. DEMURRER TO EVIDENCE. *Properly sustained, when.*

   The Court properly sustains defendant's demurrer to the plaintiff's evidence, where it does not make out a *prima facie* case. (*Post, p. 369.*)

2. SAME. *Practice established.*

   The practice of demurring to evidence is firmly established in this State. (*Post, pp. 369, 370.*)

   Case cited and approved: Hopkins *v.* Railroad, 96 Tenn., 420.

3. SAME. *How evidence is weighed.*

   On demurrer to evidence that is conflicting, the plaintiff is not entitled to have the evidence viewed in the most favorable light to himself, but the Court will look to the whole evidence, excluding none, and draw such inferences therefrom as are reasonable and just. (*Post, p. 374.*)

4. MASTER AND SERVANT. *Servant assumes risk, when.*

   A servant assumes the risk incident to the work which he is directed to do, including an increased risk arising during the performance of the work, where he is fully aware of the danger, and does not rely upon a promise to remedy it. (*Post, pp. 372, 373.*)

   Cases cited and approved: Railroad *v.* Elliott, 1 Cold., 611; Knox *v.* Coal Co., 90 Tenn., 546.

---

### FROM KNOX.

---

Appeal in error from the Circuit Court of Knox County. JOSEPH W. SNEED, J.

Corbett *v.* Smith & Co.

CLARENCE TEMPLETON and TEMPLETON & CATES for Corbett.

JOUROLMON, WELCKER & HUDSON and WELCKER & PARKER for Smith & Co.

WILKES, J.    This is an action for personal injuries. The plaintiff introduced his evidence, when defendant demurred to it, and issue was joined. The Court was of opinion there was no case of liability made out against the defendant on plaintiff's showing, sustained the demurrer, and dismissed the suit, and plaintiff has appealed, and assigned errors.

It is said, first, that it was error to consider the evidence in the meager light in which the Court below was compelled to consider it, in order to sustain the demurrer.    If we understand this assignment, it is that plaintiff having introduced his proof, and, presumably, all he had, and the defendant having introduced none, it was error in the Court to decide the case, because the evidence was too meager.    Certainly, if the plaintiff cannot make out his case by his own witnesses, uncontradicted and unquestioned, and with all legitimate inferences from their testimony, he cannot make out his case at all. He cannot complain that defendant has put the case upon his version of it, and rested it there.

It is said that it was error for the Circuit Judge to hold plaintiff's evidence insufficient, since in doing so he must pass upon questions of fact, which are exclusively within the province of the jury.    The

17 P—24

practice of demurring to evidence, and having the judgment of the Court thereon, is established in this].State, and we are not disposed to reopen the question. *Hopkins.* v. *Railroad,* 12 Pick., 420.

It is said it was error to hold the plaintiff not entitled to recover, and to sustain the demurrer, and dismiss the suit. This presents the case on its merits. Plaintiff was in defendant's employ as a millwright. Miller was the superintendent of the mill. Poole was the head miller. Through the superintendent and head miller plaintiff was directed to place what is called a feeder in a certain place while the mill was in operation. The work to be done was dangerous, and plaintiff protested, and asked that it be deferred to some time when the mill was stopped. This defendant declined to do, being behind with orders, and desiring to see the operation of the new feeder, which was designed to mix flour and meal. Plaintiff thereupon went to work, on Sunday morning, February 1, 1897, and continued on Monday, with the mill running. By Thursday the work was all done successfully, except placing two boards in place. Plaintiff took the measure for them, and went to dinner, leaving a belt around the pulley which operated this feeder. It was easier to place this belt on while the machinery was running than to remove a loose belt while running. The place where the work was done was close, dark, and dangerous. While plaintiff was absent at. dinner, Miller, the superintendent, went to

the place to examine the work, and, in order to do so, threw off the belt. Being thus thrown off, the belt would flap around a shaft near by, then suddenly loosen and fly off obliquely, making the place still more dangerous. The superintendent, seeing the increased danger, retreated a few steps, and took his stand behind a lot of spouts. Plaintiff returned with his planks, passed by the superintendent, who gave him no warning. Plaintiff, in order to reach the place, had to crawl around and among the fixtures, carrying his planks with him, and . did so successfully, until he came suddenly to where the loose belt was. He was astonished to find it off, and asked, " Who threw this belt off ? " Miller, the superintendent, replied, "I did." Plaintiff then asked him, " What did he do it for? " and he replied: "I was afraid it would catch my clothing." The plaintiff said it ought not to have been done, or, if done, it ought to have been thrown off the small pulley. Miller replied, " What are you going to do now? " Plaintiff replied, he believed he could cut the belt off, to which Miller made no reply. Plaintiff, however, became convinced he could not cut it with the small knife he had, and did not try to do so, but wound the belt up on the shaft with a board. This he did of his own volition, and not at Miller's direction. Plaintiff states that his object was to get the belt off and put on a new one, but this was not Miller's suggestion. Plaintiff states that he knew that the belt being

loose made the situation very dangerous, and would have known it even though he had not been hurt, and knew it before he went in to do the work, but . did not say to Miller that it was dangerous, but .merely that he ought not to have thrown the belt off. Miller did not direct him to go on and put in . the planks. Poole was not present at the time and had given no instructions after Saturday before the work commeneed on Monday. At the time the accident occurred there were no commands given and no requests made, · and what plaintiff did he did of his own volition. When the loose belt wound round the shaft it came loose, suddenly quartered out, and caught plaintiff's left . arm and pulled it off.

It is said it was negligence to order the work done while the mill was running; that it was negligence also to increase the danger while the work was being done. Both these propositions are granted, without considering whether the last was personal or official negligence. It is said the plaintiff was not guilty of contributory negligence and that he did not assume the risk when he undertook to do the work, nor when he remained, after the new danger had arisen, and finished the work. If these latter contentions be correct, then plaintiff is entitled to recover. But are they correct?

It will be observed, in the first place, that the injury in this case did not happen while the work on the feeder was being done. That was success-

fully finished, and the plaintiff then undertook to take off the old belt and put on a new one, and, in attempting this, was hurt. This was a matter of his own suggestion, necessary, no doubt, to the proper operation of the feeder, but not ordered to be done. He adopts his own plan to effect his purpose, and, in doing so, is injured. It cannot be denied that he was fully aware of his dangerous surroundings and the danger of the work, and that he made no objection to finishing the feeder or throwing off the belt, when he knew of the peril attending it. He cannot recover because he was required to work in a dangerous position originally, even though he protested, if, nevertheless, he proceeded to do the work. In such case he assumed the risk, unless there was a promise to remedy the danger and he relied on it. *Railroad* v. *Elliott*, 1 Cold., 611; *Knox* v. *Coal Co.*, 6 Pickle, 546. And the same rule will apply when he undertakes to complete the work after the hazard has been increased, if he is aware of it and fails to object, or even if he does the work under protest.

It is not a case of sudden emergency, when the plaintiff is compelled to act, or when he finds himself in a situation of peril and is forced to act, or when his retreat is cut off.

Of all the persons connected with the management, plaintiff was most competent to know, and did actually know, more than any one else, of the danger of his employment and situation. He was a

skilled millwright, and knew the details and dangers of his work. He went into a situation which it was evident the superintendent considered dangerous, and, so considering, evidently thought himself incompetent to direct or advise.

It is said if the evidence is conflicting, only that must be looked to which is most favorable to plaintiff, on demurrer to evidence. This is not a correct statement. The evidence must be looked to as a whole, and all reasonable inferences drawn from it in plaintiff's favor, but none of it must be excluded simply because unfavorable, but only if shown by other evidence to be incorrect.

We are not able to see upon what theory or legal ground the principal in this case can be held liable for this unfortunate accident, and, if there was negligence in the matter, as distinguished from a pure accident, it must be held to be that of the plaintiff, in attempting to perform an act of the dangerous character of which he was most aware and best competent to judge.

The judgment must be affirmed with costs.