Railroad v. Edwards.

OHIO RIVER & CHARLESTON RAILWAY CO. *v.* WILSON
EDWARDS.

(*Knoxville.* September Term, 1903.)

1. **MASTER AND SERVANT.** Vice principal is not determined
from what.
A servant's mere superiority in dignity, grade, or compensation
over other servants of the common principal is not determi-
native of the question whether or not he is a vice principal.
(*Post, p.* 43.)

Cases cited and approved: Railroad v. Wheeless, 10 Lea, 746,
747; Railroad v. Handman, 13 Lea, 438; Railroad v. Rush, 15
Lea, 151; Coal Creek Mining Co. v. Davis, 90 Tenn., 718.

2. **SAME.** General test of what constitutes a vice principal.
The most general test that a servant is a vice principal is that
he so far stands in the place of his master as to be charged
in the particular matter with the performance of a duty to-
wards the inferior servant which, under the law, the master
owes to such servant, as furnishing tools, or machinery and
appliances, or giving orders with respect to work to be done by
the subordinate. (*Post, pp.* 43-44, 48.)

Cases cited and approved: Railroad v. Bowler, 9 Heisk., 866;
Guthrie v. Railroad, 11 Lea, 372; Railroad v. Handman, 13 Lea,
423, 429; Railroad v. Lahr, 86 Tenn., 335, 341; Railroad v.
Northington, 91 Tenn., 56; Railroad v. Lawson, 101 Tenn., 408,
409.

3. **SAME.** Same. Frequent test of what constitutes a vice
principal.
A test frequently stated in our cases that a servant is a vice
principal is that he has authority to give orders, as a vice

principal, to the subordinate servant, in directing him when, where, and how to work. (*Post, p. 44.*)

Cases cited and approved: Railroad v. Jones, 9 Heisk., 33; Iron Co. v. Dobson, 7 Lea, 377, 378; Railroad v. Wheeless, 10 Lea, 741, 747; Railroad v. Handman, 13 Lea, 423, 429; Bradley v. Railroad, 14 Lea, 374-379, 380; Railroad v. Collins, 85 Tenn., 227, 229; Railroad v. Lahr, 86 Tenn., 335, 337, 340, 342; Railroad v. Martin, 87 Tenn., 398; Coal Creek Mining Co. v. Davis, 90 Tenn., 711, 717-719; Railroad v. Northington, 91 Tenn., 56, 58, 59; Railroad v. Kenley, 92 Tenn., 207, 210, 211; Hopkins v. Railroad, 96 Tenn., 409; Railroad v. Wright, 100 Tenn., 56; Railroad v. Lawson, 101 Tenn., 406, 409, 410.

4. **SAME.** Power to employ and discharge is not the test of a vice principal.

As a test whether a servant is a vice principal towards the other servants of the common principal, no stress should be laid upon the power to employ and discharge, although, when these powers exist, they add strength and dignity to the position of the vice principal. (*Post, p. 45.*)

Cases cited, distinguished, and modified: Railroad v. Bowler, 9 Heisk., 866; Knox v. Railroad, 101 Tenn., 375; Gann v. Railroad, 101 Tenn., 380, 381; Fertilizer Co. v. Travis, 102 Tenn., 16, 19.

5. **SAME.** A mere foreman to point out work is not a vice principal, when.

A mere foreman without authority from the common principal to give orders to subordinates is not a vice principal, and the power to point out the different parts of the work that the other servant shall perform is not sufficient to make such foreman a vice principal. (*Post, pp. 45-46.*)

Cases cited and approved: Fox v. Sandford, 4 Sneed, 36; Railroad v. Lahr, 86 Tenn., 335; Allen v. Goodwin, 92 Tenn., 385, 388, 389; Knox v. Railroad, 101 Tenn., 375.

Railroad v. Edwards.

6.  **SAME.  Dual relation of vice principal and of fellow servant.**
    The same person may occupy towards the servants of the common principal the dual relation of vice principal and of fellow servant.  (*Post, p.* 46.)

    Cases cited and approved:  Railroad v. Bolton, 99 Tenn., 273; Gann v. Railroad, 101 Tenn., 380.

7.  **SAME.  Temporary vice principal not exercising power is not in fact vice principal.**
    A temporary vice principal with power to give orders to those under him for the time being is not in fact a vice principal as to matters occurring during that time, unless he actually gives orders to subordinates, and they act thereunder.  (*Post, pp.* 46-47.)

    Cases cited and approved:  Railroad v. Wheeless, 10 Lea, 741; Railroad v. Collins, 85 Tenn., 228, 229; Railroad v. Martin, 87 Tenn., 398; Hopkins v. Railroad, 96 Tenn., 409.

8.  **SAME.  Term "foreman" does not indicate vice principal; facts, and not words and names, determine vice principal.**
    The mere fact that one is called "foreman" does not of itself indicate that he is a vice principal.  The question is to be determined in every case not by words and names, but by the nature and extent of the powers conferred by the master, and accepted and exercised by the superior servant.  (*Post, p.* 49.)

    Cases cited and approved:  Fox v. Sandford, 4 Sneed, 36; Railroad v. Lahr, 86 Tenn., 335.

9.  **SAME.  Foreman not shown to be a vice principal.**
    Where it is not shown that the master had placed any of his servants under a foreman and conferred upon him authority to direct, when, where, and how they are to work, nor that there had been imposed upon him by the master the duty of furnishing tools or machinery, or the performance of any other duty towards such servants, which under the law, the master

111 Tenn—3

owed to them, such foreman is not a vice principal. (*Post, p* 51.)

10. **SAME. Same. Subforeman is a fellow servant, when.**

The negligence of a subforeman of a railroad section crew is that of a fellow servant and not of a vice principal, where in pursuance of the orders of the foreman he took members of the crew, and negligently brought in a lever car, through which negligence one of the crew was injured. (*Post, pp.* 36-41, 51.)

11. **SAME. Master is not liable in damages for injuries caused by negligence of a fellow servant.**

A servant can not recover from his master damages resulting from injuries caused by negligence of a fellow servant. (*Post, p.* 51.)

12. **SAME. Servant assumes risk of employment, and cannot recover damages, when.**

A servant, who knows all the dangers of the employment, and is an experienced man, assumes the risks incident to such employment, and can not recover damages for injuries resulting therefrom. (*Post, p.* 51.)

13. **SAME. Same. Want of knowledge of an immaterial fact does not entitle servant to damages.**

The want of knowledge of a certain fact, which is immaterial in view of the facts known, does not entitle a servant to recover damages from the master for injuries resulting from the work. (*Post, pp.* 52-53.)

14. **SAME. Master's knowledge and servant's want of knowledge must concur to entitle servant to damages.**

Knowledge on the part of the master, or its equivalent, negligent ignorance, and want of knowledge on the part of the servant, or its equivalent, excusable ignorance, must concur, to entitle the servant to recover from the master damages for injuries resulting from the employment. If the knowledge or the ignorance of the master and servant are equal, so that both

Railroad v. Edwards.

are either without fault or in equal fault, the servant can not recover. (*Post, p.* 53.)

Cases cited and approved: Railroad v. Handman, 13 Lea, 428; Railroad v. Hodges, 1 Shannon's Cases, 434; Railroad v. Smith, 9 Lea, 685; Railroad v. Wheeless, 10 Lea, 741; Brewer v. Coal & Coke Co., 97 Tenn., 615; Brown v. Railroad, 101 Tenn., 252, 255, 256; Trotter v. Furniture Co., 101 Tenn., 260; Corbett v. Smith, 101 Tenn., 368, 372, 373; Ferguson v. Cotton Mills, 106 Tenn., 236, 239, 240; Gann v. Railroad, 101 Tenn., 380, 387.

15. **SAME.** Same. Rule modified in emergencies, when,

Where the servant acts in an emergency, and under a direct command of the master to do a thing which is not so glaringly dangerous as that a man of ordinary prudence would not undertake it, or where the servant accepts from the master a defective tool without examing it, relying upon the master's skill and knowledge in the selection of the tool, the rule stated in the preceding headnote is modified, and the servant can recover. (*Post, pp.* 53-54.)

Cases cited and approved: Railroad v. Duffield, 12 Lea, 63; Guthrie v. Railroad, 11 Lea, 372.

16. **DEMURRER TO EVIDENCE.** Sustained by the supreme court, reversal and dismissal.

Where the supreme court sustains a demurrer to evidence and reverses the judgment of the circuit court, it will dismiss the plaintiff's suit, and not remand for a new trial. (*Post, p.* 54.)

---

FROM WASHINGTON.

---

Appeal from the Circuit Court of Washington County.—C. J. St. JOHN, Judge.

KIRKPATRICK, WILLIAMS & BOWMAN, for Railroad.

BURROW BROS. and ISAAC HARR, for Edwards.

MR. JUSTICE NEIL delivered the opinion of the Court.

This action was brought in the law court at Johnson City by Edwards to recover damages for injuries alleged to have been inflicted upon him by the negligence of the railway company. He recovered judgment for $4,000, and the company has appealed and assigned errors.

Objections were taken below to the declaration, and it was amended, and this was objected to; and after these points were disposed of the testimony of the defendant in error was offered, and thereupon a demurrer to the evidence was interposed by the plaintiff in error. This demurrer was overruled, and the cause went to the jury, with the result above stated.

The evidence discloses the following state of facts:

The plaintiff, Edwards, was in the employ of the company primarily as a track-walker, but the duties of this position did not require all of his time; and it was his further duty, after he had finished his work as track-walker during the day, to join the section force and perform such duties as pertained to any member of that force. The section force to which he belonged had for its boss one Grant. On the afternoon on which the accident occurred, the aforesaid section boss directed Bryant, who was the subforeman or subboss, to take three men and proceed about a half mile up the track, and bring down a lever car and some tools he would

find there.   This order was given in the presence of Ed-
wards, and other members of the section force.    Ed-
wards, Reedy, and Tittle, all members of the section
force, proceeded with Bryant to the place designated by
the section boss, for the purpose of bringing down the
car and tools just referred to.   Just before they arrived
at the place where the lever car stood, they saw a dump
car coming down the track, in charge of one Hensley,
an employee of a lumber company that had a plant on
the side of the railway company's road.   Bryant sig-
naled Hensley to stop, and he did so.   Bryant there-
upon said to Hensley, in effect, that he desired to put
the lever car on the track in front of the dump car.
This was accordingly done. Hensley then proposed that
he should ride upon the lever car and assist in the work-
ing of the lever, and that Reedy should draw the dump
car with a cant hook that he (Hensley) had, which was
a part of his outfit as a lumberman.    This arrange-
ment was agreed to, or, rather, no objection was made
to it, and Reedy and Hensley thereupon disposed them-
selves in the manner directed.

When they started, the five men were engaged as fol-
lows:   Edwards and Hensley sat with their backs to
the dump car, and their faces fronting down the track.
Bryant and Tittle sat with their faces towards the dump
car, and with their backs in the direction the lever car
was to go.   These four men were so arranged in their
places for the purpose of working the lever.   Reedy sat
apart, with his face to the dump car, and the cant hook

attached to a rod in the front of that car. While the parties were in this position the two cars were started; the lever car being propelled by its lever in charge of the four men, as above indicated, and the dump car being drawn by the cant hook in the hands of Reedy. After they had proceeded a considerable distance, and had gotten near the place where the dump car was to stop, Bryant put his foot upon the brake with a view to stopping the cars; but on looking up he saw that, in some manner unexplained in the testimony, the cant hook had become detached from the dump car, and it was coming down towards the lever car uncontrolled, and only about eight feet distant. With a view to preventing a collision, Bryant took his foot from the brake so as to allow the lever car to proceed more rapidly; but he was too late, and the dump car struck against and bumped the lever car. At this time Edwards was standing upon the lever car, with his back to the dump car. The shock given by the stroke of the dump car to the lever car knocked Edwards backward upon the track, and the dump car ran over him and injured him badly.

The dump car was constructed as all other cars of that kind on the road in question, and did not have, as a part of its make-up, a brake. It was customary in using that car to supply the place of a brake by putting a piece of wood between the wheels and the boxing; but this car had no boxing around the wheel, and it would have been impossible to use a piece of wood in the manner stated if there had been any one upon the dump car

Railroad v. Edwards.

to use it, but there was no one upon that car to control it in any way.

The dump car was about three times heavier than the lever car, and it was down grade at a considerable inclination from the point where they started to the place where the accident occurred.

The dump car belonged to the railroad company, but at the time was in use by the above-mentioned lumber company for the purpose of transporting logs to its mill, and, as above stated, was in charge of the lumber company's agent, Hensley, at the time it was halted by Bryant, in the manner above indicated, when the lever car was put upon the track.

Edwards was an experienced man in the section work, and had previously been one of a number of men who had conveyed the dump car down the track with the lever car, but on that occasion he was behind the dump car, not in front of it. The reason the dump car on the present occasion was placed behind the lever car was that the dump car had to be stopped at a point short of the camp of the section force. If the lever car had been put behind the dump car, it would have been necessary, when arriving at the place of stoppage for the dump car, to take the lever car from the track and transport it around to the front of the dump car. To avoid this additional labor, the lever car was at the outset placed in front of the dump car.

Edwards knew that the dump car, even when properly constructed, had no brake upon it. He did not

know, however, that the boxing around the wheel was absent, and that the dump car was so far defective. He did know, however, that it was behind the lever car; that no one was upon it to guide it or control it; that the only contrivance for controlling it was the use of the cant hook in the manner above indicated; that it was at his back as he sat down to the lever; that it was three times the weight of the lever car; and that they were going down grade.

The duties of the subforeman were "to work as any other section hand while the foreman was present, and in the absence of the foreman to keep the men at work the same as the foreman did."

The cause of action stated in the declaration, as first drawn, was that the defendant had been guilty of negligence "in causing him [plaintiff] to be placed on a lever car with his back towards a moving flat car, an unsafe and dangerous place, the dangers of which were unknown to plaintiff, but were known, or could have been known, to defendants, by the exercise of ordinary care and caution of their part." This was the first count. The second count placed the action on the ground that "plaintiff and other section hands, under the supervision of a section boss, were moving a flat car along the track by means of a lever car, when and where, by reason of the fact that said flat car was equipped with a dangerous, defective, and unsafe brake, which was insufficient to stop the car, and by reason of which said flat car ran against said lever car, and

Railroad v. Edwards.

plaintiff was knocked off, run over, and injured as aforesaid; and plaintiff avers that said defective and unsafe brake was unknown to him, but was known, or could have been known, to defendants, by the exercise of ordinary care and caution on their part."

Defendant demurred to the first count on the ground that the declaration showed that plaintiff's injuries arose from risks incident to the service. The second count was demurred to on the same ground. The circuit judge sustained the demurrer to the first count, but overruled the demurrer to the second.

Thereupon the plaintiff amended the first count so as to read as follows:

"Plaintiff avers that his injuries as aforesaid were caused by the wrongful, negligent, and careless acts of defendant in this case; that plaintiff was engaged and employed as a section hand, and his ordinary and common duty as such employee required him to work upon and aid in keeping defendant's track in repair, when on the date and at the place aforesaid plaintiff was taken from his usual work, and was by order of his common superior sent to aid in putting a lever car on the track, and with it to aid in putting a flat car on defendant's said track, a work with which he was totally unfamiliar, and which was outside of the general scope of his employment, and, by reason of said negligent, careless, and wrongful order of said superior, plaintiff was placed on said lever car with his back to the flat car which was being propelled, a dangerous and unsafe place to work,

the dangers of which were unknown to plaintiff, but were known, or should have been known, to defendant; and, while plaintiff was in the exercise of due care and caution on his part, said flat car ran suddenly and unexpectedly into and upon said lever car, and plaintiff was thrown therefrom, run over, and injured as aforesaid."

Defendant demurred to the declaration as amended on three grounds: First, because it did not aver that the plaintiff was the servant of the company; second, because the injuries complained of were such as were incident to plaintiff's employment; and, third, because the plaintiff's injuries resulted from his own reckless conduct in turning his back upon a flat car following the lever car upon which he was seated. All three of these grounds were overruled by his honor the circuit judge. Thereupon the plea of not guilty was entered. The testimony was taken, and the demurrer thereto was filed and overruled, as above stated.

Upon the overruling of the demurrer the case went to the jury for the assessment of damages, and they returned a verdict of $4,000, for which judgment was entered, and the defendant has appealed and assigned errors.

The first error is assigned upon the failure of the court to sustain the demurrer to the declaration as amended, and the second error is upon the failure of the court to sustain the demurrer to the evidence. The third error assigned is that the verdict was excessive.

Passing the first assignment of error, and assuming for the present that the evidence recited above falls within the allegations of the declaration, we shall briefly consider the question chiefly discussed in this case, and presented by the second assignment of error; that is, whether the circuit judge erred in failing to sustain the demurrer to the evidence. In the solution of this question it is necessary to consider two others: First, whether Bryant stood to Edwards in the relation of vice principal; and, secondly, if so, whether the circumstances were such as that Edwards assumed the risk of injury to himself by getting upon and propelling the lever car under the facts stated above.

In order to determine the first question, it will be necessary to make a brief reference to our cases bearing upon the subject of vice principal.

It should be first observed that the mere superiority in dignity, grade, or compensation, in favor of one servant of a common principal over other servants, is not a mark by which to distinguish whether or not the former is a vice principal. *Railroad* v. *Wheless*, 10 Lea, 746, 747, 43 Am. Rep., 317; *Railroad* v. *Handman*, 13 Lea, 428; *Railroad* v. *Rush*, 15 Lea, 151; *Coal Creek Mining Co.* v. *Davis*, 90 Tenn., 718, 18 S. W., 387. The most general test is that, in order to be a vice principal, a servant must so far stand in the place of his master as to be charged in the particular matter with the performance of a duty towards the inferior which, under the law, the master owes to such servant—as furnishing

tools (*Guthrie* v. *Railroad*, 11 Lea, 372, 47 Am. Rep., 286), or machinery and appliances (*Railroad* v. *Lahr*, 86 Tenn., 335, 341, 6 S. W., 663), or giving orders with respect to work to be done by the subordinate (*Railroad* v. *Handman*, 13 Lea, 423, 429).

A test frequently stated in our cases is the authority to give orders, as a vice principal, to the subordinate servant, in directing him when, where, and how to work. *Iron Co.* v. *Dobson*, 7 Lea, 377, 378; *Railroad* v. *Wheless*, 10 Lea, 741, 747, 43 Am. Rep., 317; *Railroad* v. *Handman*, 13 Lea, 423, 429; *Bradley* v. *Railroad*, 14 Lea, 374-379, 380; *Railroad* v. *Collins*, 85 Tenn., 227, 229, 1 S. W., 883; *Railroad* v. *Lahr*, 86 Tenn., 335, 337, 340, 342, 6 S. W., 663; *Coal Creek Mining Co.* v. *Davis*, 90 Tenn., 711, 717-719, 18 S. W., 387; *Railroad* v. *Northington*, 91 Tenn., 56, 58, 59, 17 S. W., 880, 16 L. R. A., 268; *Railroad* v. *Kenley*, 92 Tenn., 207, 210, 211, 21 S. W., 326; *Electric Ry. Co.* v. *Lawson*, 101 Tenn., 406, 409, 410, 47 S. W., 489; *Railroad* v. *Jones*, 9 Heisk., 33. In some of these cases, and in others to be presently cited, a distinction is taken between one who has authority, derived from the principal, to give orders to subordinates, and a mere foreman without such authority, the latter being held not to be a vice principal. In some of the cases it is indicated that in addition to the power to give orders is included the power to employ and discharge. *Knox* v. *Railroad*, 101 Tenn., 375, 47 S. W., 491; *Gann* v. *Railroad*, 101 Tenn., 380, 381, 47 S. W., 493, 70 Am. St. Rep., 687; *National Fertilizer Co.* v.

*Travis,* 102 Tenn., 16, 19, 49 S. W., 832. In one case the test is indicated as the power to employ and direct. *Railroad* v. *Bowler,* 9 Heisk., 866. In these cases, however, no stress is laid upon the element embraced in the power to employ and discharge. These features are merely mentioned incidentally.

We are of the opinion, therefore, that the real test is that one which we first stated, and of which the second is a constituent part, and that no strees should be laid upon the power to employ and discharge, although, when these powers exist, they add strength and dignity to the position of the vice principal.

Some illustrations of the foregoing are seen in the following cases: *Railroad* v. *Bowler,* 9 Heisk., 866; *Railroad* v. *Northington,* 91 Tenn., 56, 17 S. W., 880; *Railroad* v. *Lawson,* 101 Tenn., 408, 409, 47 S. W., 489. In these cases a section boss was held to stand as vice principal to the section hands under him because he had power to order them with respect to their work, and also because it was his duty to see that they had proper tools with which to work. In *Railroad* v. *Collins,* 85 Tenn., 227, 1 S. W., 883; and *Railroad* v. *Martin,* 87 Tenn., 398, 10 S. W., 772, 3 L. R. A., 282, it was held that the engineer was the vice principal of the brakeman on a train when, in the absence of the conductor, he had power to give the brakeman orders in respect to his work, but otherwise not; and in *Railroad* v. *Wright,* 100 Tenn., 56, 42 S. W., 1065, it was held that the con-

ductor stands as vice principal to all of the train force, because they are all under his orders.

The rules applicable to the subject are further illustrated by the fact that the same person may occupy a dual relation towards the servants of the company— that of vice principal and of fellow servant. *Railroad v. Bolton,* 99 Tenn., 273, 41 S. W., 442; *Gann v. Railroad,* 101 Tenn., 380, 47 S. W., 493, 70 Am. St. Rep., 687.

In *Railroad v. Bolton,* it is said: "It is apparent that one may be the general representative of the master, so as to charge the latter with the results of all negligence occurring within the scope of his employment, and yet he may abandon his position of superior, with the authority attached to it, and become a fellow servant of those engaged in doing the work in hand, and on a plane of perfect equality with them. In the one case the master would be responsible for his negligence, and in the other we think he would not be."

The following illustration is given from *Taylor v. E. & T. H. R. Co.* (Ind.) 22 N. E., 876, 6 L. R. A., 584, 16 Am. St. Rep., 372: "If, for instance, the general superintendent should take hold of one end of an iron rail to assist an employee of the company in loading on the car, he would be, as to that single act, a fellow employee, although as to other acts he might be the representative of the company."

The subject is further illustrated by the cases which hold that although one may be a vice principal *pro tem.,*

Railroad v. Edwards.

so to speak, and has power to give orders to those who are under him for the time being, yet he is not really vice principal as to matters occurring during that time unless he in fact give orders to subordinates, and they act thereunder. ˙ This is illustrated by the case of an engineer, who is vice principal in the absence of the conductor, and has control of the train, yet, where he in fact gives no orders, but both he and the brakeman employed upon the train follow out their regular line of duties, or pursue the orders previously given by the conductor, in such a case the engineer is not in fact, as to things done, the vice principal of the brakeman, but only a fellow servant, and the company would not be liable, for his negligence, to such fellow servant. *Railroad* v. *Wheless,* 10 Lea, 741, 43 Am. Rep., 317; *Railroad* v. *Martin,* 87 Tenn., 398, 10 S. W., 772, 3 L. R. A., 282; *Railroad* v. *Collins,* 85 Tenn., 228, 229, 1 S. W., 883; *Hopkins* v. *Railroad,* 96 Tenn., 409, 34 S. W., 1029, 32 L. R. A., 354.

It has been held, however, that the mere fact of being foreman of a job, with power to point out different parts of the work that other servants should perform, is not sufficient to make such foreman a vice principal. *Allen* v. *Goodwin,* 92 Tenn., 385, 388, 389, 21 S. W., 760; *Knox* v. *Railroad,* 101 Tenn., 375, 47 S. W., 491. See, also, *Fox* v. *Sandford,* 4 Sneed, 36, 46, 67 Am. Dec., 587.

The case of *Knox* v. *Railroad,* supra, introduces a distinction applying to those cases wherein the special duties to be performed both by the foreman and his co-

employees are plainly laid down by the master, and the foreman merely sends those associated with him to the performance of their previously appointed tasks, and notifies them when to desist, thus having and exhibiting practically no authority.

In *Allen* v. *Goodwin,* 92 Tenn., 385, 21 S. W., 760, cited in the preceding authority, the case presented was one wherein it appeared that the plaintiff was injured by the negligence of the foreman while working along with his associates; that is, by the personal, as distinguished from the official, negligence of the foreman.

It did not appear that the foreman gave any orders to the plaintiff, or that he had authority to give any. The error which the circuit judge committed in that case was in not sufficiently setting forth to the jury the principle that the fact of mere superiority of grade in the service of a common master is not sufficient to charge the latter with the negligence of the superior servant when one of the other servants is injured by that negligence. Speaking to this subject, the court said that the matter of mere superiority in grade was an immaterial circumstance, but that, on the contrary, to charge the master with the negligence of such superior servant, the latter "must so far stand in the place of the master as to be charged in the particular matter with the performance of a duty towards the inferior servant which, under the law, the master owes to that servant;" that, on looking to the charge as a whole, the court thought it "was calculated to mislead the jury into believing that

if Gallagher was foreman for defendant, and pointed out to plaintiff the work to be done by him, therefore he was the vice principal, and the master would be liable for his acts of negligence;" that "a foreman is one who takes the lead in the work, and may or may not have authority over his fellow workmen, and because he takes the lead, and points out the work to be done, it does not necessarily follow that he stands in the place of the master. . . . The important point is not what name he bears, but, what authority does he have?"

The two cases of *Fox* v. *Sandford,* 4 Sneed, 36, 67 Am. Dec., 587, and *Railroad* v. *Lahr,* 86 Tenn., 335, 6 S. W., 663, illustrate the proposition that the mere fact that one is called "foreman" does not of itself indicate that he is vice principal. In the first of these cases, while Sandford was spoken of as the foreman, yet he was engaged in work with the hands under him, and it was held that the company was not liable for his negligence while so acting. It did not appear in that case what his duties as foreman were. So, in the case of *Railroad* v. *Lahr,* while it appeared that one Ligon was foreman, yet it did not affirmatively appear that he was charged with the duty of furnishing safe appliances for the workmen under him. Therefore it was held that the company was not liable for an injury that befell one of its employees who caught hold of a rope, thinking it was fastened, and attempted to descend from the bridge, when in fact it was not, and he fell something like 40 feet.

111 Tenn—4

He first asked Ligon, the foreman, if the rope was fastened, and the latter told him that it was.    The company, however, was not held liable; it not appearing that Ligon was charged with the duty of furnishing the means of descending from the bridge.

It is perceived that the foregoing discussion is confined wholly to our own cases.    We have not undertaken to state any general rule for determining when an employee may be rightly considered as vice principal.    To formulate such a rule from the cases in the various jurisdictions of our country would be impossible.    The greatest contrariety of opinion prevails.    This is forcibly exhibited in Bailey on Master and Servant, in the extended consideration which he has given this subject.    From that discussion, it appears that in some jurisdictions the power to direct and control which one servant is given over another is a determinative feature, as with us (sections 1909, 1950, 1951, 1956, 2212, 2214, 2218, 2219, 2220, 2244, 2306, 2309) ; also the duty to furnish a place and appliances for work (sections 1833, 2114, 2324) ; the duty to keep machinery in repair (section 2110) ;. the duty of overseeing or managing machinery (section 1863) ; the duty of superintending work of which one is placed in charge (section 2195).    In some jurisdictions it is held that the power to direct and control is not a sufficient mark to indicate the office of vice principal.    Sections 1963, 1985, 2075, 2088, 2073, 2160, 2226, 2273, 2276, 2286, 2292, 2301, 2471, 2476.    In some jurisdictions it is held that the determinative mark is

the power to employ, direct, and discharge other employes.  Sections 1978, 2057, 2296, 2397, 2423, 2440, 2511, 2512, 2513.  In some cases it is held that the power to employ, direct, control, and discharge is not sufficient to make one servant the vice principal of another (sections 2305, 2241b), even if such superior servant have entire charge of the business (section 1851). Other cases hold that the power to employ and discharge is not a determinative one (section 2060) ; also where one is a mere foreman without controlling power (sections 2052, 2133, 2055).

In this discordant state of the decisions of our sister States, we cannot do better than to adhere to the rules laid down by our predecessors, and so long administered in this State.

The question now to be considered is whether, under our authorities, the subforeman in the present case, under the facts proven, fall within the definition above given of a vice principal.  We are of the opinion that he does not.  It is not shown that the master had placed any of its servants under him, and conferred upon him authority to direct when, where, and how they were to work, or that there had been imposed upon him by the master the duty of furnishing tools or machinery, or the performance of any other duty towards such servants which under the law the master owed to such servants. It is not even shown in the testimony what were the duties of the main foreman, whose authority the subforeman was supposed to exercise in the absence of the for-

mer.    The question is to be determined in every case not by words and names, but by the nature and extent of the powers conferred by the master, and accepted and exercised by the superior servant.

It follows that the negligence of Bryant was that of a fellow servant, and for this the plaintiff could not legally recover below, and his recovery cannot be sustained here.

The same conclusion must be reached on the ground that Edwards assumed the risk by going upon the lever car under the circumstances in which he did go upon it.

He was familiar with the whole situation, except that he did not know that no boxing was around the wheel of the dump car.    This latter fact, however, really had no effect upon the result.    The only effect it could have had, if any one had been upon the dump car, would have been that no stick or piece of wood could have been used to act as brake, for lack of boxing to rest it against. But as there was no one upon the dump car to check it, and this was known to Edwards, it is unimportant, as far as he is concerned, that the stick could not have been used as a brake if any one had been upon that car.    So the case before us is that Edwards knew that the dump car was much larger than the lever car, that there was no one upon it, that it was connected with the lever car only by the cant hook in the hands of Reedy, and that they had to go down grade.    The whole danger was patent to him, and he was an experienced man.    Under these circumstances we think the plaintiff took the risk,

Railroad v. Edwards.

and could not recover. In *Railroad* v. *Handman,* supra, the rule is thus laid down: "In ordinary cases the jury should be told that, to authorize a recovery, these two things must concur: Knowledge on the part of the master, or its equivalent, negligent ignorance, and a want of knowledge on the part of the servant, or its equivalent, excusable ignorance. If the knowledge or the ignorance of the master and servant in respect to the character of the machine are equal, so that both are either without fault or in equal fault, the servant cannot recover." Citing 2 *Thompson, Neg.* 995, 1009; *E. T., Va. & Ga. R. Co.* v. *Hodges,* 2 Leg. Rep., 6 [1 Shannon's Tennessee Cases, 434]; *Nashville, Chattanooga & St. Louis Ry. Co.* v. *Wheless,* 10 Lea, 741, 43 Am. Rep., 317. See, also, *Brewer* v. *Tenn. Coal & Coke Co.,* 97 Tenn., 615, 37 S. W., 549; *Trotter* v. *Furniture Co.,* 101 Tenn., 260, 47 S. W., 425; *Railroad* v. *Smith,* 9 Lea, 685; *Corbett v. Smith & Co.,* 101 Tenn., 368, 372, 373, 47 S. W., 694; *Brown* v. *Electric Ry. Co.,* 101 Tenn., 252, 255, 256, 47 S. W., 415, 70 Am. St. Rep., 666; *Ferguson* v. *Phoenix Cotton Mills,* 106 Tenn., 236, 239, 240, 61 S. W., 53. See, also, *Gann* v. *Railroad,* 101 Tenn., 380, 387, 47 S. W., 493, 70 Am. St. Rep., 687. There is a modification of the rule where the servant acts in an emergency, and under a direct command of the master to do a thing which is not so glaringly dan-. gerous as that a man of ordinary prudence would not undertake it. This is recognized in *Railroad* v. *Duffield,* 12 Lea, 63, 47 Am. Rep., 319; but the facts of the pres-

ent case are not sufficient to bring it within that rule. Nor are the facts sufficient to bring it within the rule of *Guthrie* v. *Railroad,* 11 Lea, 372, 47 Am. Rep., 286, wherein it appeared that a servant accepted from the master a defective tool without examining it, relying upon the master's skill and knowledge in the selection of the tool.

We are of the opinion, therefore, that the circuit judge erred in not sustaining the demurrer to the evidence.

We now turn to the first error assigned—the failure of the circuit judge to sustain the demurrer to the first count of the declaration as amended. Without discussing this matter, we are of the opinion that the circuit judge acted correctly in overruling the demurrer. The declaration, in other parts, which we have not copied, sufficiently stated the fact that the plaintiff was a servant of the company; and, as to the other two points in the demurrer, they are fully met by the allegations of the declaration as amended. The circuit judge also properly overruled the demurrer to the second count.

It should be observed, however, that the facts as proven do not sustain the case set out in either the original or the amended declaration, but fall wholly outside of the allegations of the pleadings.

It results that the judgment of the circuit judge must be reversed, and the plaintiff's case dismissed, with the costs of this court and the court below.