ACME BOX COMPANY *v.* BASCOM GREGORY, by next friend,
and
ACME BOX COMPANY *v.* J. L. GREGORY.

(*Knoxville.* September Term, 1907.)

1. **MASTER AND SERVANT.** Safe place to work; servant
assumes risk of a known dangerous place or hole, when.
It is the duty of the master to furnish the servant with a safe
place to work; but where the servant has full knowledge of
the danger, and continues to work in the dangerous place, he
assumes the risk, as where the plaintiff knowing the exposed
condition of a hole in the floor, continues to work there, he
assumes the risk. (*Post, p.* 541.)

Cases cited and approved: Railroad v. Smith, 9 Lea, 685; Brew-
er v. Coal Co., 97 Tenn., 615; Brown v. Electric Co., 101 Tenn.,
252; Corbett v. Smith, 101 Tenn., 368; Iron Co. v. Pace, 101
Tenn., 476, 486-489; Ferguson v. Cotton Mills, 106 Tenn., 236.

2. **SAME.** Same. Master's duty to inspect premises; no pre-
sumption of negligence from failure for a short time.
It is the duty of the master to exercise reasonable care to in-
spect the premises and the place where his servants are
engaged, but no presumption of negligence will arise from his
failure to inspect during the short period of four and one-half
hours after a defect suddenly appeared by the patch, covering a
hole in the floor, being torn off, and leaving the hole open and
unprotected, when no indication of anything wrong was com-
municated to him. (*Post, pp.* 541, 542.)

3. **NEW TRIALS.** Overruled motion for a new trial may be
embraced in bill of exceptions for review on appeal, when.
A motion for a new trial overruled and refused may be brought
to the supreme court in the bill of exceptions, where a written

motion was filed stating the grounds on which a new trial was sought, where it appears on the minute book that such a motion was made, and what disposition was made of it, with a reference made to the written motion so filed, and notation of the filing entered on the rule docket. (*Post, pp.* 542-547.)

Acts cited and construed:   Acts 1875, ch. 106.

Cases cited and distinguished:   Railroad v. Egerton, 98 Tenn., 541, 542, 543; Railroad v. Johnson, 114 Tenn., 632.

4  **PEREMPTORY INSTRUCTIONS.** For verdict for defendant where plaintiff as employee assumed a known risk.
Peremptory instructions for a verdict in favor of the defendant should be given, where the plaintiff as employee with full knowledge of the danger continues to work in the dangerous place; and the defendant as employer is guilty of no negligence. (*Post, pp.* 539-542.)

5.  **SAME.** Same. Dismissal of suit upon reversal for failure to give.
Where a judgment in favor of the plaintiff is reversed upon the ground that the circuit judge erroneously refused to give peremptory instructions for a verdict in favor of the defendant, the supreme court will dismiss the suit. (*Post, pp.* 539-542, 547.)

FROM HAMILTON.

Appeal in error from the Circuit Court of Hamilton County.—M. M. ALLISON, Judge.

SMITH & CARSWELL and JAMES H. ANDERSON, for Box Company.

SHEPHERD & FRIERSON, for Bascom.

MR. JUSTICE NEIL delivered the opinion of the Court.

The first suit was brought by Bascom Gregory, a minor, to recover for personal injuries alleged to have been inflicted upon him by the negligence of the plaintiff in error, and the second was brought by his father to recover for loss of services of the son on account of the same injury. Both cases were tried at the same time, resulting in a verdict of $2,250 in favor of Bascom Gregory and $3,000 in favor of J. L. Gregory. From these judgments the plaintiff in error, after his motion for a new trial was overruled, appealed to this court, and has here assigned errors.

The errors assigned are: First, there is no evidence to sustain the verdict; second, the court erred in failing to sustain a motion for peremptory instructions, offered by the plaintiff in error, at the close of the testimony of the plaintiff below, and also at the close of all the evidence; and, thirdly, that the verdict was so excessive as to indicate passion, prejudice, or corruption on the part of the jury.

We shall consider the first and second assignments together.

The defendant in error Bascom Gregory was a boy seventeen years old, and appears from his testimony to be a young man of average intelligence. He was employed by the plaintiff in error in the fall of 1905 to saw scraps of lumber into certain forms according to directions. The saw on which he was working was located on a table in front of him. Near by, to his rear, there

was another saw of the same kind, worked by another
boy. The two tables were distant from four to eight
feet, as variously estimated by the witnesses. At the
edge of the saw table just back of the defendant in error,
there was a hole about sixteen inches square, which had
been in the floor for many years, but up to the morning
of the accident it was covered with pieces of plank
nailed over it. Over this patch in the floor there was
a box   which was used for scraps falling from the
saw of the boy just behind him. This box would get full
and have to be emptied about every fifteen minutes, and
it would require about ten minutes to take it out and
empty it and get back with it. During this interval
the patch in the floor would be exposed. The defendant
in error had been in the employ of the company about
a week, and his work went along without incident until
the morning of the accident. On that morning it was
discovered that the patch had come off, or been torn off
—at least, was off—leaving the hole exposed, and noth-
ing to protect it except the box, when the latter was
resting over it. This situation was disclosed at 7 o'clock
in the morning, and the defendant in error was hurt
about 11:30. He was fully aware of the existence of the
hole, and of the fact that it was dangerous when ex-
posed, and that it was exposed, and would be exposed,
say twice in every half hour, during the day. It was
a part of the defendant  in error's duty to go some dis-
tance from the saw that he was working on, and fill his
arms with scraps of lumber, and go back to his saw, and

place them on the table for use in sawing. On one such occasion, during the day, about 11:30 o'clock, he went out to get the scraps, and came back with his arms full, and placed them on the table at a convenient distance to pick them up as he would need them in sawing. As he placed the armful of scraps on the table he stepped back, and, for the moment forgetting the existence of the hole, stepped in it, and this threw his right arm over the saw on the table back of him and lacerated it so much that it had to be amputated. There is no testimony that the defendant in error, or any one else, informed the master that the patch had been torn off, and the hole exposed; nor is there testimony of the exposure of this hole.

The foregoing are the undisputed facts. The question is whether they make out a case of liability against the master.

We think they do not. It is the duty of the master, of course, to furnish the servant with a safe place to work; but where the servant has full knowledge of the danger, and continues to work in the  dangerous place, he is held to assume the risk. *Iron Co.* v. *Pace,* 101 Tenn., 476, 486—489, 48 S. W., 232; *Ferguson* v. *Phoenix Cotton Mills,* 106 Tenn., 236, 61 S. W., 53; *Brown* v. *Electric Co.,* 101 Tenn., 252, 47 S. W., 415, 70 Am. St. Rep., 666; *Corbett* v. *Smith & Co.,* 101 Tenn., 368, 47 S. W., 694; *Brewer v. Tennessee, etc., Coal Co.,* 97 Tenn., 615, 37 S. W., 549; *Railroad* v. *Smith,* 9 Lea, 685. In the present case, if we assume that the master was in fault in not discovering the existence of the hole in question

in so short a time, still the servant would be precluded from recovery, because the defect in the floor was perfectly obvious, and the risk or danger of it was also perfectly apparent to the servant. But we do not think that the facts show any negligence on the part of the master, since the defect was one that suddenly appeared, and it is not shown that the master had any knowledge of it. It is, of course, the duty of the master to exercise reasonable care to inspect the premises and the place where his servants are engaged. But we do not think any presumption of negligence could arise from his failure to inspect during the $4\frac{1}{2}$ hours covering the period of the existence of the hole unprotected by the patch, when no indication of anything wrong was communicted to him by those under whose immediate observation the defect was; that is, the defendant in error and his fellow servants.

On the grounds stated, we think the peremptory instruction should have been given.

However, it is insisted in behalf of the defendant in error that the plaintiff in error cannot make the question above disposed of in this court, because his motion for a new trial in the court below was not entered at large upon the minutes of the court, but only in the bill of exceptions. In support of the proposition we are referred to *Railroad* v. *Egerton*, 98 Tenn., 541, 41 S. W., 1035, and *Railroad* v. *Johnson*, 114 Tenn., 632, 88 S. W., 169.

Before referring to these cases, it is proper that we

should state the exact facts concerning the entries in the present cases. In each case, the following entry appears upon the minutes:

"Defendant's motion for a new trial, heretofore filed in writing in this case, was heard by the court and overruled, to which action of the court the defendant then and there excepted, and prayed an appeal to the next term of the supreme court to be held at Knoxville, which was granted to defendant on giving bond and security for costs and damages incident to the appeal."

In each case there is an entry on the rule docket showing that a motion for a new trial had been filed, and another and later entry on the same docket showing that the motion had been overruled. In the bill of exceptions the motion for a new trial was copied *in extenso.* It likewise shows that it had been marked "Filed" by the clerk on the same day, as shown by the entry on the rule docket.

There is no order of the court below, contained in the present record, showing that that court has a rule requiring motions for new trial to be presented in writing, showing the grounds of the motion; but, in the view we take of the statute below referred to, this is immaterial.

As authority for incorporating the motion for a new trial in the bill of exceptions, we are referred by counsel for plaintiff in error to chapter 106, p. 189, of the Acts of 1875, which (omitting the enacting clause) reads as follows:

"That where a motion for a new trial shall be *granted* or *refused,* either party may except to the decision of the court and may *reduce to writing the reasons offered for said new trial, together with the substance of the evidence in the case,* and also the decision of the court on said motion; and *it shall be the duty of the judge,* before whom such motion is made, *to allow and sign the same; and such bill of exceptions shall be a part of the record in the case,* and it shall be lawful for the appellant in such case to have assigned for error that the judge in the court below improperly granted. or refused a new trial therein, and the supreme court shall have power to grant new trials, or to correct any errors of the circuit court, in granting or refusing the same."

The italics are not in the act, but we have made the italics for the purpose of more convenient reference.

It is insisted for plaintiff in error that the language italicized, taken in connection with the other language appearing in the act, requires that the grounds for a new trial shall be incorporated in the bill of exceptions.

It is insisted that this act applies, not only to bills of exceptions made up in cases where a new trial has been granted and the party against whom it is granted desires to make a record, in order that the propriety of the judge's action may be subsequently tested in the supreme court, after there shall have been a judgment in the court below against which that court refused to grant a new trial, but that it applies to all motions for new trial; that is to say, it is insisted for the plaintiff in

error that, when a motion for a new trial is either grant-
ed or refused, the party who considers himself aggrieved
by the action of the court, either granting or refusing
the motion, has the right to take a bill of exceptions in
the manner provided therein, and to incorporate in such
bill of exceptions the grounds of the motion; that this
applies just as well in cases where the judge of a lower
court refuses to grant a new trial, and an appeal is
taken from that action to the supreme court, as to cases
where he grants the new trial against a verdict which
the winning party on that trial seeks to maintain.

It is insisted that this statute was not referred to or
considered by the court in the case of *Railroad* v. *Eger-
ton*, supra. In that case the court said:

"The defendant appealed in error; its motion for a
new trial and in arrest of judgment being overruled, as
it avers and as appears in the bill of exceptions. It
does not appear, however, on the minutes of the court
that such motions were made, though the bill of excep-
tions recites the fact that they were made. We can-
not, therefore, hold that any such motions were made
at all. If made, it was necessary that they should have
been entered on the minutes of the court, and even
though they had been in fact made, and the bill of ex-
ceptions presented to us be treated as showing that they
were made, it is still indispensable that they should ap-
pear, with the action of the court thereon, on the min-
utes. It is not the office of a bill of exceptions to pre-

119 Tenn.—35

serve minute entries, and take the place of the minutes of the court." 98 Tenn., 542, 543, 41 S. W., 1035.

It does not appear in the case from which we have just quoted that there was any entry at all on the minutes. In the cases before the court there were entries on the minute book, showing that a motion for a new trial had been made and overruled, and the complete motion was filed in the office of the clerk, and notation made on the rule docket.

We have here a clear reference in the minutes to a designated paper where the exact language referred to therein could be found. We think this was fairly within the rule laid down in the *Egerton Case.*

Moreover, we are of the opinion that the statute above quoted not only requires that a motion for a new trial shall be filed, stating the grounds on which it is sought to question the action of the court below, but that this motion may be brought up to this court in the bill of exceptions. It should, however, appear upon the minute book that such a motion has been made, and the disposition of it, and there should be at least a reference to the motion on file, such as was made in the cases now before the court. The better practice would be, also, as laid down in *Railroad v. Egerton,* to set forth the whole motion on the minutes of the court.

The case of *Railroad* v. *Johnson* is not at all adverse to the present view. In that case, indeed, the court, in an opinion by Mr. Justice Shields, enforces by reason and authority the proposition that this court, in cases

coming from the lower courts of law, can act only upon such matters as were passed on by such lower courts, and that there should be a motion for a new trial, pointing out specifically the objections to the action of the lower court, and that the case should be tried here upon the propriety of the ruling of that court in respect of the matters so complained of. In other words, the opinion in the case of *Railroad* v. *Johnson* arrives at the same proposition in substance by a course of reasoning and the use of general authorities which we here hold is likewise acquired by the act of 1875. The opinion in that case refers merely in passing to *Railroad* v. *Egerton* on the point that the motion must be reduced to writing and entered upon the minutes of the court. This remark is merely incidental in the opinion referred to, and the court did not have in mind the statute above copied. We do not think that either of the cases cited was intended to establish a rule different from that laid down in the statute, or can be treated as qualifying that rule.

On the grounds stated above, we are of the opinion that the judgment of the court below should be reversed, and the suit dismissed.