De Glopper v. Railway & Light Co.

WILLIAM DE GLOPPER, by next friend v. NASHVILLE
RAILWAY & LIGHT COMPANY.

(*Nashville.*   December Term, 1910.)

1. PERSONAL INJURIES.   Plaintiff must prove injuries re-
sulting from negligent breach of a duty owed to him.

A plaintiff suing for a personal injury negligently inflicted by the
defendant must establish, by a preponderance of the testimony,
(1) a duty which the defendant owes to him, (2) a negligent
breach thereof, and (3) injuries received thereby, resulting
proximately from such breach of duty. (*Post, pp.* 642, 643.)

2. SAME.   Same.  Burden is on plaintiff to prove injuries from
negligent breach of duty owed him, either directly or in-
directly.

Where a plaintiff, suing for a negligent personal injury, avers that
the duty which the defendant owed him arose out of a particular
relationship, or that the negligence constituting its breach
consisted of a particular act, omission, or thing, he must prove
his case substantially as alleged, either by direct testimony of
witnesses who know the facts, or by direct proof of indirect,
but correlated, facts from which the duty owing him, the injury
done him, the negligence of defendant, and its proximate causal
connection with the injury may be reasonably inferred.   (*Post,
p.* 643.)

3. SAME.   Mere fact of injury never raises a presumption of
negligence; but accident that does not ordinarily happen
under proper care shows want of proper care.

When such method of establishing a liability is resorted to, neg-
ligence is never inferred from the mere fact of injury, because
the mere fact of injury never raises a presumption of negli-
gence; but the act causing the injury and defendant's negligence
and the injury must all be shown, and the *nexus* between them
must appear in the relationship of cause and effect; but when

De Glopper v. Railway & Light Co.

a thing which has caused an injury is shown to be under the management of the party (the defendant) charged with negligence, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party (the defendant) charged, that it arose from the want of proper care. (*Post, pp.* 643-645.)

Cases cited and approved. Railroad v. Lindamood, 111 Tenn., 457; Traction Co. v. Giese, 229 Ill., 263; Snyder v. Electric Co., 43 W. Va., 661; Benedict v. Potts, 88 Md., 52.

4. SAME. Same. Doctrine expressed by maxim "res ipsa loquitur" is defined and illustrated.

Such indirect method of arriving at the negligence of the defendant is generally expressed by the maxim *"res ipsa loquitur"* (the thing itself speaks), and is merely a short way of saying that the mere occurrences in themselves import negligence, or that the circumstances attendant upon the accident are themselves of such character as to justify a jury in inferring negligence as the cause of the injury, but it in no wise modifies the general doctrine that negligence will not be presumed. (*Post, pp.* 643, 644.)

Case cited and approved: Snyder v. Electric Co., 43 W. Va., 668.

5. SAME. Same. Same. The rule or maxim "res ipsa loquitur" applies, when and when not.

Where the act which caused the injury was shown by direct evidence, and all the circumstances of the accident were proved, and the only reasonable explanation of the accident gave rise to an inference of negligence, the rule of *"res ipsa loquitur"* applies; but such rule or maxim does not apply where both the act which caused the injury and the negligence of the defendant in relation to the act must be inferred from the accident itself. *Post, pp.* 645-647.)

Case cited and approved: Sauer v. Brewing Co., 3 Cal. App., 127.

De Glopper v. Railway & Light Co.

6. **SAME. Street railroad in permitting its cars to be heavily loaded with passengers is not guilty of actionable negligence toward persons on the street.**

The fact that a street railroad company permitted so large a number of passengers to occupy a car as to cause it to be heavily loaded while on a sharp ascent in the street is not actionable negligence toward persons on the street. (*Post, p.* 647.)

7. **STREET RAILROADS. Must receive and transport passengers tendering the fare and finding places of safety.**

A tender to a street railroad company of the requisite fare, and the ability of the passenger to find a place of safety on the car would impose an obligation on the company to receive and transport the passenger. (*Post, p.* 647.)

8. **SAME. Actionable negligence by the company is not shown where a person on the street is injured by hard substance thrown by heavily loaded cars ascending a sharp ascent.**

A person, while passing near a heavily loaded street car stalled on a sharp ascent, was struck in the eye with force by a hard, rough, triangular shaped substance coming from under the car while its wheels were revolving rapidly in the same place on the track. An expert testified that the probable effect of such revolution of the wheels would be to throw out slivers of steel from the rail or wheel, or both, with considerable force. The track was examined at the place of the accident soon after it occurred, and particles of sand were found on it; but it did not appear that the car men had used any sand. It was customary to place sand on the track, when needed to prevent the slipping of the wheels. There was no evidence that either the machinery or the wheels of the car or the rails were defective. Upon these facts, it was held, as a matter of law, that actionable negligence of the street railway company was not shown.

Cases cited and approved: Hayes v. Railroad, 111 U. S., 228; Wood v. Railroad, 5 Pennewill (Del.), 373; Foulke v. Railroad, 5 Pennewill (Del.), 368; Railroad v. Anderson, 20 Am. St. Rep., 493; Railroad v. Locke, 112 Ind., 404; and authorities cited in Railroad v. Lindamood, 111 Tenn., 457.

FROM DAVIDSON.

Appeal from the Second Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court. — M. H. MEEKS, Judge.

W. H. WASHINGTON and THOMAS H. ANDREWS, for plaintiff.

R. F. JACKSON, for defendant.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

This action was commenced in the circuit court of Davidson county to recover damages for personal injuries received by William De Glopper, a boy fourteen years of age, and there was a trial before the circuit judge and jury, and a verdict and judgment for plaintiff below in the sum of $4,000. An appeal was taken to the court of civil appeals, and this judgment reversed, and the suit dismissed, and to review which action of the court of civil appeals a petition for *certiorari* is filed in this court and errors assigned.

The plaintiff below states his cause of action in substance as follows: In the first count it is thus stated:

"At the time of said injuries, to wit, on the 27th day of October, 1906, the defendant was running a car towards the east on Church street, at and near its inter-

section with Ninth avenue, north, on its West Nashville line. Said car was in charge of a motorman of defendant, and had underneath it the electrical machinery which moved and controlled it. At the time of said injuries, said electrical machinery was defective and out of repair, and the wheels of said car were defective, so that, when revolving rapidly upgrade, they would throw off slivers or pieces of iron or steel with great force."

"At said place there exists a heavy upgrade east on Church street, and on the day and year aforesaid, whilst said car with said defective electrical machinery and defective wheels was ascending said steep grade, the plaintiff, seated in a buggy, was driving upon the street, and was in the exercise of ordinary care, and when near the side of said car the motorman negligently managed, manipulated, and handled the electrical and propelling power, of said car, which together with the defective electrical machinery caused the wheels of said car to revolve at a furious, excessive, and dangerous velocity at the same place upon the rails, without giving the car any perceptible movement forward. Said unusual, extraordinary, and dangerous velocity of the wheels, together with the defects in the material of which they were composed, caused pieces of silver or material to be broken therefrom and from the rails of the track of defendant, which were defective, and to be thrown off at a tangent, with tremendous force, one of which struck plaintiff in the eye, and cut, tore, and lacerated it so badly that it was necessary to take it out, which was accordingly thereafter done. The said injury and cut in

plaintiff's eye was the direct and proximate result of the said negligence of defendant, and was directly due to the negligence of the motorman in failing to properly apply the electrical current, and to the negligence of defendant in having electrical machinery so defective as to cause the wheels to run away, get beyond control, and revolve at such excessive and tremendous velocity as to break and wear away the wheels of said car, as well as the rails of the track at that point, which, by the negligence of defendant, were defective and wholly unfit to bear the excessively rapid revolutions of the wheels at the same place, and said injuries were thus directly and proximately due to the grinding and wearing of the metal upon metal, and to the friction upon the tracks, all directly brought about by the said negligence of defendant and its agent and servant, the motorman in charge of said car. The defective condition of said electrical machinery, wheels, and rails was known to defendant, or could have been known by ordinary care, and was unknown to plaintiff."

In the second count it is thus stated:

"At the time of said injuries, to wit, on the 27th day of October, 1906, whilst plaintiff was driving along Church street at and near Ninth avenue, north, in Nashville, the defendant had negligently allowed and permitted its track at said point to become defective and dangerous, on account of the accumulation thereon of rock, gravel, debris, and other hard, sharp material, and on the day and year aforesaid, whilst plaintiff was driving along said street, seated in a buggy, a car of defendant was in

such defective condition, and so negligently managed by the motorman of defendant in charge of it, that the wheels were thereby caused and permitted to run away and revolve in practically the same place at such excessive and dangerous velocity, in endeavoring to ascend a heavy grade at said point, as to grind up, take up, and throw off at a tangent said rock, gravel, debris, and other hard, sharp material and substance, and hurl it against and into the eye of plaintiff, whereby it was put out, and had to cut out, thereby disfiguring and disabling him for life."

"From said injuries plaintiff suffered and still continues to suffer great pain and agony of body and mind, and was permanently injured, and lost much time, and expended considerable sums in nursing and doctor's bills."

"Before the happening of said injuries, defendant knew of the defects in the machienry of said car, which caused the wheels to revolve so rapidly at the same place upon the rails, as well as the defective condition of the surface of its track at said place, or might have known it by ordinary care, and it was unknown to plaintiff; and the said injuries were directly and proximately due to the said negligence of defendant, and the negligence of its motorman, in carelessly and negligently handling said car."

In the third count it is thus stated:

"At the time of the injuries set out in the counts of the original and amended declaration, to which reference is made herein and which are made a part hereof, the

said car was negligently overloaded for the place and grade, and this fact, to wit, because there was more load upon the car than it could safely carry at that place, was the direct and proximate cause of the stalling of the car, and the extremely rapid revolutions of the wheels, which caused said sliver of metal or hard substances to be thrown off with great force, and which struck plaintiff in the eye, inflicting the injuries described and set out in said amended declaration."

The facts of the case are as follows:

On the 28th of October, 1906, William De Glopper, with two boy companions, was driving west on Church street, near Ninth avenue, and they met a car of the defendant in error coming east on the same street. There is a sharp ascent in the grade of the street at this point, and the car of the defendant in error stalled. It was heavily loaded, and the motorman applied the power in such a way that the wheels of the car revolved very rapidly without moving the car, except that the car would lurch forward a few inches or a few feet, and would again stop, and the wheels would continue to revolve rapidly in the same place. The plaintiff in error was in a small buggy drawn by a pony, and was on the left-hand side of the buggy next to the car, and when his position was somewhat in front of the rear trucks, and west of the center of the car, he suddenly threw his hand to his eye and cried: "Stop! Something flew from under that car and hit my eye."

The plaintiff in error was struck in the lower left-hand corner of the eye with a triangular substance with a

rough edge, which penetrated the eye and destroyed it. On the following day his eye was removed. There was no one on the street west, east, or south of plaintiff in error who could have thrown the substance inflicting the injury in a manner in which it was done, and the windows of the car, as well as the vestibules, were all closed in such a way that no one upon the car could have done so. The car was twenty-eight feet long and twelve feet high, and thus it made it impossible for the injury to have been inflicted by a person to the south of plaintiff in error. The wind was not blowing.

A witness was introduced as an expert, who says that the probable effect of revolving the steel wheels of the car rapidly in the same place upon the steel rails of the track when the car is heavily loaded is to throw out slivers of steel, either from the rail or wheel, or both, with considerable force. This witness stated that he has seen this occur on different occasions, and that it results from the nature of the wheel and the track, when subjected to the great friction that would be created by the rapid revolution of the wheels while the car is heavily loaded and stationary.

The track of defendant was examined at the place of the accident soon after it occurred, and particles of sand were found upon it; but the witness could not say that the servants of defendant in error were using sand just before or at the time of the accident. It is a custom of defendant in error to place sand on its track wherever needed to prevent the slipping of the wheels.

15  Cates—41

When the eye of plaintiff in error was examined soon after the accident, as well as when it was removed, no foreign substance was found in it. It was seen, however, that the cornea had been penetrated by a hard, rough, triangular shaped substance of sufficient weight to fall out of the eye. There is no other proof tending to show that either the machinery or the wheels of the car, or rails of the track, were defective. There is no proof tending to show that defendant in error had notice, or should have had notice by the exercise of due care, of any of the alleged defects. There is no proof of the negligent operation of the car, other than the facts stated— that it was heavily loaded, and stalled at the ascent in the street, and the motorman, in applying the power to propel the car, caused the wheels to revolve very rapidly at the same place. The plaintiff in error was rightfully upon the street and in the exercise of due care.

The foregoing facts appear entirely from the testimony of the plaintiff in error. The defendant in error, at the conclusion of the testimony of plaintiff moved the court to direct a verdict in its behalf, which was overruled, and the case was given to the jury without any further proof being offered.

In every action for damages resulting from injuries to the plaintiff, alleged to have been inflicted by the negligence of the defendant, it is incumbent upon the plaintiff to establish by a preponderance of the testimony, three propositions:

De Glopper v. Railway & Light Co.

(1)  A duty which the defendant owes to him.

(2)  A negligent breach of that duty.

(3) Injuries received thereby, resulting proximately from the breach of that duty.

If he aver that the duty which the defendant owes him arises out of a particular relationship, or that the negligence constituting its breach consists of a particular act, omission, or thing, he must prove his case substantially as averred. This may be done, either by direct testimony of witnesses who know the facts, or by direct proof of indirect, but correlated, facts from which the duty owing him, the injury done him, the negligence of defendant, and its proximate causal connection with the injury may be reasonably inferred. When such method of establishing liability is resorted to, negligence is never inferred from the mere fact of the injury; but the act which produced it, and defendant's negligence, and the injury must all be shown, and the *nexus* between them must appear in the relationship of cause and effect. This indirect method of arriving at the negligence of defendant is generally expressed by the maxim *"res ipsa loquitur."* Literally translated, if means "the thing speaks for itself," and is merely a short way of saying that the circumstances attendant upon the accident are themselves of such a character as to justify a jury in inferring negligence as the cause of the injury. It in no wise modifies the general doctrine that negligence will not be presumed.

The mere fact of an injury never raises a presumption of negligence. *Benedict* v. *Potts*, 88 Md., 52, 40 Atl.,

1067, 41 L. R. A., 478; *Chicago Union Traction Co. v. Giese,* 229 Ill., 263, 82 N. E., 232; *Snyder* v. *Wheeling Electric Co.,* 43 W. Va., 661, 28 S. E., 733, 39 L .R. A., 499, 64 Am. St. Rep., 922.

The general meaning of the maxim is well expressed by the supreme court of Illinois in *Chicago Union Traction Company* v. *Giese,* supra, as follows:

"When a thing which has caused an injury is shown to be under the management of the party charged with negligence, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from the want of proper care."

This rule finds its most common application in cases where one in passing along the street is hurt by a barrel falling from a door above, or by a brick falling from a wall or scaffold, or by a falling shutter or wall, or the like. The mere occurrences in themselves import negligence.

In *Snyder* v. *Wheeling Electric Company,* 43 W. Va., 668, 28 S. E., 735, 39 L. R. A., 499, 64 Am. St. Rep., 922, supra, it is said that:

"Where things of great danger are used in public highways, where multitudes constantly and lawfully pass, their very nature requires the highest degree of care; and if one is killed by their being out of place or defective, why may we not logically and fairly assume negligence, unless other plausible explanation appears?"

The limitations upon this doctrine are well defined and well understood, and are fully illustrated and fully expressed by this court in *Railroad* v. *Lindamood,* 111 Tenn., 457, 78 S. W., 99, where the court quoted the following from the supreme court of California with approval:

"Unless facts are shown from which negligence may be reasonably inferred, a jury should never be permitted to infer arbitrarily and without evidence that there was negligence. When a fact is established, some other fact may be justly inferred therefrom; but when a plaintiff instead of presenting a fact or facts from which the negligence of the defendant may be reasonably inferred, gives to the jury only a presumption drawn from other facts, the jury are not to be allowed to infer negligence from such presumption. The inference cannot be drawn from a presumption, but must be founded upon some fact legally established."

Applying these principles to the present case, we find that plaintiff in error was passing the car mentioned when his face was about six feet from the car, with his left side to the car, when he was struck in the left eye with force by a hard substance coming from under the car, while the wheels of the car were revolving rapidly in the same place under a heavy load. The fact that the substance which struck plaintiff in error in the eye came from under the car is a fact which may reasonably be drawn from the whole circumstances of the accident by a fair inference from the situation of the parties at the time. It is not directly proven, and is arrived at by inference only. There is no direct, open, and visible con-

De Glopper v. Railway & Light Co.

nection between this inferred fact and the rapid turning of the wheels of the car at the same place. Whatever of connection there may be between the turning of the wheels and the striking of plaintiff in error arises only upon inference, and in order to make this connection between the operation of the car and the injury of plaintiff in error it must be inferred that the substance which struck plaintiff in error came from under the car, and from that fact it must be further inferred that it was thrown from under the car by the rapidly turning wheels, and there still must be superadded to these two inferences the further inference that the motorman was negligent in the operation of the car at the time, or that the wheels of the car were defective, or that the track was defective at the place of the accident, and that defendant in error had notice of the defects, or by the exercise of due care should have known of them.

If the act which caused the injury was shown by direct evidence, and all of the circumstances of the accident were shown in the proof, and if the only reasonable explanation of the accident should give rise to an inference of negligence, then the rule of *"res ipsa loquitur"* would apply; but there can be no foundation for the application of this maxim where both the act which caused the injury and the negligence of defendant in relation to the act must be inferred from the accident itself. You cannot well say that an act is negligent, unless you know what it is. It is said in one case that the maxim under consideration can have no application where the injured person and the alleged negligent person were both in the exercise of an equal right and were each chargeable with the

De Glopper v. Railway & Light Co.

same degree of care. *Sauer* v. *Eagle Brewing Co.*, 3 Cal. App., 127, 84 Pac., 425.

The only fact that is directly proven, from which it is possible that negligence might be inferred, is the fact that the car was heavily loaded upon a steep ascent in defendant's track, so much so that it stalled and the application of the power to its machinery caused the wheels to slip and revolve rapidly. Nothing else appears than the facts stated. It is not proven that the car was overloaded, or carelessly loaded, or that the power was negligently or improperly applied. It is a matter of common knowledge that the wheels of a street car may turn rapidly at the same place upon the rails of the track, when both the wheels and the rails are in perfect condition and the motorman is in the exercise of due care.

Street cars are run for the accommodation of the public, as well as profit to the company, and the courts cannot say that the fact that the company permits a large number of passengers to occupy the car sufficient to load it heavily is an act of negligence. To so hold would work very great inconvenience to the traveling public and impair the efficiency of the car service.

One of the requirements of modern city life is rapid transit, and the public has demanded that the street cars at certain hours of the day be loaded to their utmost capacity. It is doubtful if the company could refuse to receive a passenger upon its car as long as there was room in the car for him. A tender to the company of the requisite fare and the ability of a passenger to find a place of safety upon the car would impose an obligation upon the company to receive and transport the passenger.

Thus it appears that the jury could not infer negligence from the single statement that the car was heavily loaded and that there was a sharp ascent in the street. Cases illustrating the general doctrine stated in this opinion are the following: *Wood* v. *W. C. Ry.*, 5 Pennewill (Del.), 373, 64 Atl., 246; *Foulke* v. *W. C. Ry.*, 5 Pennewill (Del.), 368, 60 Atl., 793; *Railroad Co.*, v. *Locke*, 112 Ind., 404, 14 N. E., 391, 2 Am. St., Rep., 187; *Hayes* v. *Railroad Co.*, 111 U. S., 228, 4 Sup. Ct., 369, 28 L. Ed., 410; authorities cited in *Lindamood's Case*, supra.

The negligence averred in the declaration as the proxmate cause of the injury is:

First. That the electrical machinery and wheels of the car were defective.

Second. That the rails were worn and out of repair.

Third. That the motorman was negligent and careless in the management and operation of the car.

Fourth. That rocks and debris and other hard substances had been allowed to accumulate on the track.

Fifth. That the car was overloaded.

There is no testimony in the record tending to establish either of the alleged acts of negligence, and from the facts proven, if it were permissible to infer the act which caused the injury, no inference points directly to one of the acts of negligence rather than any of the others. What caused the injury, and the defendant's negligent connection with it, are left entirely at large by the proof, and are matters of pure conjecture. Under all the cases cited, this is not sufficient.

It results that there is no error in the judgment of the court of civil appeals, and the petition is disallowed.