MOORE COAL CO. *v.* BROWN.

(*Knoxville,* September Term, 1933.)

Opinion filed Nov. 18, 1933.

J. H. Underwood, for Moore Coal Co.

Ben F. Alexander, for J. H. Brown.

Mr. Justice Swiggart delivered the opinion of the Court.

The plaintiff, J. H. Brown, recovered damages for personal injuries from his employer, Moore Coal Company, and the judgment was affirmed by the Court of Appeals. We have heretofore granted the employer's petition for the writ of *certiorari*. Oral argument was waived by both parties.

Plaintiff's declaration avers that he suffered an incapacitating hernia while pushing an empty coal car into a mine room, where he was employed to dig and load coal. He charges his employer with negligence (1) in requiring him to push the car, contrary to his contract of employment; (2) in failing to provide a sufficient number of men to do the work; and (3) in permitting the ties of the rail track to become loose so as to render his footing insecure.

Plaintiff's testimony is that when he was employed he was told that the cars would be placed for him, and that he would only be required to load them, but that subsequently the foreman repudiated that agreement by telling him to take his tools and quit if he did not want to do the pushing; and after that the plaintiff "pushed."

We can see no element of negligence, as a basis for the recovery of damages, in this action of the foreman. It was no more than a modification of an original agreement, in which plaintiff, by continuing to work, acquiesced.

At the time of the accident, plaintiff and Lum Goins were pushing the car in the room where they were digging coal. The track was up grade, and it was necessary to push the car about twenty feet. Plaintiff had been working in this room a month and a half, and presumably had been pushing the cars as at the time of his accident. He testified that it was all he and Goins could do to push the car.

Goins, testifying as a witness for plaintiff, said they had no trouble in pushing the car; that he had been pushing the cars ever since he had worked in the mine; that, if four men happened to be in a room, all would push, but two could do it, and "by pushing sometimes hard a man could push it." Mr. Moore, the owner, testified without contradiction that it was the custom of the mine for men to push the cars to the point of loading, the face of the room.

Plaintiff's description of the accident, which is all the evidence on the point, is as follows:

"Q. Before you got to the face tell what happened? A. When we started to push it this tie slipped on the

rail on the track in some way or other, they failed to drive the spike tight enough, or they will work loose—

"Q. What position were you in? A. I was this way (indicating) with my shoulder against the car and this foot on the tie and this hand this way on the brake that way (indicating) and pushed all that I could push—

"Q. What happened then? A. I felt something tear across my side.

"Q. What side? A. Right side.

"Q. What happened to the tie when you was in that position? A. Slipped.

"Q. When did you feel this tear with reference to when the tie slipped? A. When the tie slipped we stopped, I couldn't push and my Buddy could not push it, he said—

"JUDGE BOSWELL. Don't tell that—

"Q. What did you feel? A. I felt something sting across there and burnt and hurt and in a minute or two my Buddy—

"Q. What effect did it have on you? A. Made me awful sick.

"Q. What did you do? A. Pushed the car on in the face, me and my Buddy, he is an awful hard working man—"

There is no evidence in the record as to the general and customary condition of the track and ties in the room where the accident occurred. There is no evidence that it was necessary or desirable that the ties be spiked so tight that they would not slip, and there is nothing to charge the employer with notice that the particular tie was loose or to impose upon him the duty of tightening it before the accident.

The employer had elected to operate without com-

plying with the Workmen's Compensation Law, as a consequence of which he is deprived of the common-law defenses that the plaintiff assumed the risk of injury, or was injured by his own negligence or that of a fellow servant. Code 1932, sections 6857, 6862.

 But notwithstanding the elimination of these defenses, plaintiff is entitled to damages only if his injury was proximately caused by some act or omission on the part of the employer or his agents amounting to negligence, or want of reasonable care.

It is not contended that the force which the plaintiff was required to exert in pushing the car was the cause of the injury. We quote from plaintiff's brief: "On the occasion when plaintiff was injured he and one other man were trying to push a heavy coal car up this steep grade to the face of the coal and a loose tie in the track slipped with plaintiff, causing the injury complained of —a rupture." We think plaintiff is correct in thus assigning the slipping of the tie as the proximate cause of the injury; and in this view of the accident the pushing of the car was merely a contributory condition which made the accident possible, but which did not of itself produce or cause it. It is purely a matter of conjecture whether the injury would not have occurred when the tie slipped, even if three or four men had been pushing the car, instead of the two who were pushing.

This was the view taken of the case by the Court of Appeals, holding the employer negligent as follows: "If it were the duty of the master to furnish a safe place to work, then the question is, was the place safe, and not how or when it became unsafe? It was the duty of the master to make the place safe in the first instance, an1 to see that it remained safe."

The employer's liability for the accident must therefore depend upon whether he was negligent in permitting the tie to become loose, so that it slipped under the weight of plaintiff's foot. But to charge him with negligence in this, it must appear that he had notice of the defective condition of the tie, or that in the exercise of ordinary care he should have known of it. *Memphis Street Ry. Co.* v. *Stockton,* 143 Tenn., 201, 226 S. W., 187, 22 A. L. R., 1467; *Acme Box Co.* v. *Gregory,* 119 Tenn., 537, 105 S. W., 350, 351; *Griffin & Son* v. *Parker,* 129 Tenn., 446, 164 S. W., 1142, L. R. A., 1917F, 497; *Nashville, C. & St. L. R. Co.* v. *Hayes,* 117 Tenn., 680, 99 S. W., 362; *East Tennessee & W. N. C. R. Co.* v. *Lindamood,* 111 Tenn., 457, 78 S. W., 99.

The ruling of the Court of Appeals as above quoted would make the employer an insurer to his employees of the safety of their working place. This holding is clearly in conflict with the authorities cited.

In *Acme Box Company* v. *Gregory, supra,* the plaintiff's injury was caused by a hole in the floor of the platform where he was working, and the proof was that the hole had been apparent for four and one-half hours before plaintiff's accident. The court ruled no negligence on the part of the employer was shown, ''since the defect was one that suddenly appeared, and it is not shown that the master had any knowledge of it.''

In this case, there is no fact or circumstance in the evidence which would charge the employer with notice of the defective tie. There is nothing to indicate that it could have been discovered by any reasonable inspection until the force applied by the plaintiff's foot caused it to slip. In this situation the authorities cited seem to us to force the conclusion that there is no evidence to sup-

port the finding of negligence on the part of the employer, and that the plaintiff has not shown himself entitled to recover damages for his injury.

We therefore direct a reversal of the judgment of the Court of Appeals, and, since there was no motion for a directed verdict in the trial court, the case will be remanded for a new trial. The costs of the appeal and of this court will be adjudged against the plaintiff.