Davis M. SWINEY and wife Helen
Swiney, Plaintiffs-Appellees,

v.

MALONE FREIGHT LINES and Charles
Wayne Wilson, Defendants-Appellants.

Court of Appeals of Tennessee,
Eastern Section.

April 30, 1976.
Certiorari Denied by Supreme Court
July 26, 1976.

Dennis H. Inman, Morristown, for Malone Freight Lines and Charles Wayne Wilson.

Howard W. Rhea, Sneedville, for Davis M. Swiney and wife Helen Swiney.

GODDARD, Judge.

## OPINION

This appeal presents two principal questions, the first of which, insofar as we have been able to determine, is one of first impression in this state: (1) Does the doctrine of *res ipsa loquitur* apply where a wheel becomes detached from a moving vehicle, and (2) if so, did the Defendants introduce sufficient proof to entitle them to a directed verdict at the conclusion of all the proof?

The facts are relatively simple and undisputed. Plaintiffs' proof showed that on December 21, 1973, about 1:30 p. m., Davis M. Swiney, Plaintiff-Appellee, was driving his 1967 Chevrolet automobile in a northerly direction on U.S. Highway 11–W in Grainger County just north of Bean Station. He was meeting a tractor-trailer which was leased to Malone Freight Lines and was being operated by Charles Wayne Wilson, Defendants-Appellants, who owned the vehicle in partnership with Marshall Adams. The tractor was equipped in the rear with dual tandem wheels. As the vehicles approached each other the tractor's outside left-rear forward wheel became detached. Mr. Swiney was able to avoid a collision with this wheel, but shortly thereafter a second wheel also became detached and rolled down the highway striking Mr. Swiney's vehicle in the center of the grill. The collision resulted in injuries to Mr. Swiney and damages to his automobile.

At the conclusion of the Plaintiffs' proof the Trial Court, being of the opinion that the facts presented were sufficient to permit the claim to go to the jury under the doctrine of *res ipsa loquitur*, overruled Defendants' motion for a directed verdict.

The Defendants thereupon introduced proof to show that the tractor-trailer in question was returning to its home terminal in Birmingham, Alabama, from a trip to Pittsburgh, Pennsylvania. It was loaded with carpeting which weighed approximately 40,000 pounds. The lug bolts, which held the dual wheels in place, had sheared, causing the wheels to become disengaged. The wheels in question had been inspected on three separate occasions within four days prior to the accident: (1) regular 30-day inspection by Malone Freight Lines four days prior to the accident, (2) inspection on the day of the accident by Defendant Wilson at Salem, Virginia, where he tested the wheels with a "tire billy," (3) inspection on the day of the accident by Tennessee Public Service Commission representatives at the Tennessee-Virginia state line.

Defendant Wilson, who was an experienced truck driver, having driven trucks for seven years and this particular truck seven months, testified that the wheels were last removed some 30 days prior to the accident when new tires were installed. He also testified that he had had no difficulty with the wheels in the seven months that he had driven the truck, and that if the lug nuts became loose a driver could detect it because "when you go into a curve, when you come back to straighten back up with the road it will want to keep on sliding over with you, and it will just twist you can't . . . ." When asked by his attorney if one could tell when lug nuts are loose by looking at them, he testified as follows:

A. Yes, you can tell, if they have been loose just a day, you can . . . just any truck driver can look at them and just look at them and tell that they are loose because they'll a rusty ring come out from under every one of them.

Q. All right, now, did you see any rusty rings around those lugs when you looked at them at Salem, Virginia?

A. No.

Fred Massengill, claims manager for Malone Freight Lines, testified as to the procedure used in connection with its regular 30-day inspection; however, Jackie Donaldson, the employee who made the inspection, was not called to testify.

Although as indicated, no Tennessee cases have dealt with the exact factual situation here presented, the Tennessee courts have applied the doctrine in other situations involving motor vehicles—unattended vehicle rolling down incline, *Bullington v. Whitson*, 223 Tenn. 315, 444 S.W.2d 152 (1969); *Roberts v. Ray*, 45 Tenn.App. 280, 322 S.W.2d 435 (1958); vehicle being operated off travel portion of the road, *Hudson v. Stepp*, 54 Tenn.App. 640, 393 S.W.2d 301 (1965); *Sullivan v. Crabtree*, 36 Tenn.App. 469, 258 S.W.2d 782 (1953). In *Hudson*, supra, Judge Parrott of this Court restates the doctrine and its procedural effect (54 Tenn. App. at 643, 393 S.W.2d at 302):

Tennessee has long recognized that the doctrine of *res ipsa loquitur* is applicable to certain automobile accidents. It is said in the very able opinion in *Sullivan v. Crabtree*, 36 Tenn.App. 469, 258 S.W.2d 782, that where a motor vehicle, without apparent cause, runs off the road and causes harm, the normal inference is that the driver was negligent and *res ipsa loquitur* is usually held to apply. The opinion further defines the doctrine of *res ipsa* as follows:

"The classic statement of the doctrine of *res ipsa loquitur* is this: '[W]here the thing [causing the harm] is shown to be under the management of defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care.' Erle, C. J., *Scott v. London and St. Katherine Docks Co.* (1865), 3 H. & C. 596, 159 Eng.Reprint 665, 667.

\* \* \* \* \* \*

"The maxim *res ipsa loquitur* means that the facts of the occurrence evidence negligence; the circumstances unexplained justify an inference of negligence. In the principle of proof employed, a case of *res ipsa loquitur* does not differ from an ordinary case of circumstantial evidence. *Res ipsa loquitur* is not an arbitrary rule but rather 'a common sense appraisal of the probative value of circumstantial evidence.' *Boykin v. Chase Bottling Works*, 32 Tenn.App. 508, 520–523, 222 S.W.2d 889, 896."

It also sets out the procedural effect of the doctrine on page 476 of 36 Tenn.App., on page 785 of 258 S.W.2d:

"It warrants an inference of negligence which the jury may draw or not, as their judgment dictates. (Citing authority.)

"It raises a presumption of negligence which requires the jury to find negligence if defendant does not produce evidence sufficient to rebut the presumption. (Citing authority.)

"It not only raises such a presumption but also shifts the ultimate burden of proof to defendant and requires him to prove by a preponderance of all the evidence that the injury was not caused by his negligence. (Citing authority.)"

We have also found in 46 A.L.R.2d, at 110, an annotation that is precisely in point. The cases cited thereunder and the later case service disclose that Arkansas, Connecticut, Louisiana, Mississippi, Missouri, New Jersey, New Mexico, New York, Ohio and Washington in similar factual situations have applied the doctrine. Only two jurisdictions, Massachusetts and the Sixth Circuit Court of Appeals, applying Michigan law, can be said to hold contra. In the Massachusetts case, *Sennett v. Nonamtum Coal Co.*, 284 Mass. 390, 187 N.E. 758 (1933), as is pointed out in the annotation, the doctrine apparently was not raised, and in the federal case, *General Motors Corporation v. Wolverine Ins. Co.*, 255 F.2d 8 (6 Cir., 1958), wherein the owner of the vehicle which lost the wheel was suing the manufacturer, the Court pointed out that there was no evidence to show that the wheel

broke loose prior to the accident, and that "the physical and testimonial evidence indicated convincingly that the wheel was broken off as a result of the car's rolling over."

Defendants strongly insist, however, that two Tennessee cases are controlling and dispositive of the questions. The first, *Smith v. Fisher*, 11 Tenn.App. 273 (1929), involved a truck which, as a result of a mechanical breakdown, was being steered backward down an incline. This Court, in that case, rejected application of the doctrine and used the following language (at page 282):

. . . The mere fact that the universal joint broke and the brake-band "snapped" is not, of itself, evidence of a negligent failure to inspect the truck.

Huddy on Automobiles (7 Ed.), sec. 419; 42 C.J., p. 897.

The rule of *res ipsa loquitur* does not apply to the facts of this case. The undisputed proof tends to show that the truck in question was inspected for defendant, at reasonable intervals, by an automobile mechanic.

Moreover, the proof is that any inspection of the truck that could have been made (without tearing it down) would not have revealed a defect in the universal joint, and that there was no visible or discoverable defect in the brake-band.

In a later case, *Sloan v. Nevil*, 33 Tenn. App. 100, 229 S.W.2d 350 (1949), the host driver was sued by the widow of a deceased passenger. The accident occurred when the front end of the vehicle in which they were riding "dropped to the paving and the car turned over." Although the Defendants cite this case as one involving a detached wheel, our understanding of the facts from the opinion suggests it more likely involved a broken axle. In any event, the accident occurred while they were on their way to a World Series game in St. Louis, and the Tennessee court was applying the Illinois guest statute which required proof of willful and wanton negligence to sustain a verdict in favor of a guest passenger. The Court, while recognizing the doctrine could not be used to show willful and wanton

negligence, by way of *dictum*, said (33 Tenn.App. at 110, 229 S.W.2d at 354):

It is also insisted for the plaintiff that the doctrine of *res ipsa loquitur* applies and furnishes an inference of negligence on the part of the defendant.

The doctrine of *res ipsa loquitur* would not, if applicable to this case, create an inference of wilful and wanton negligence as contemplated by the Statute. In this case the plaintiff offered no proof of any negligence of the defendant and if the doctrine of *res ipsa loquitur* furnished an inference of negligence we think this inference disappeared when the defendant explained the cause of the accident as the falling down of the front of the car on the highway.

We are of the opinion that neither of these cases is dispositive of the case at bar. As to *Smith*, we cannot equate a tractor wheel, which is removed and replaced at regular and frequent intervals, becoming detached with the sudden breaking of a universal joint or a brake band. Additionally, there was proof that an inspection of the truck (unless it was "torn down") would not have revealed a defect in the universal joint, and that there was no visible or discoverable defect in the brake band. In *Sloan*, the Court specifically found, undoubtedly upon proof adduced in the record, that the accident was caused by a latent defect that could not have been discovered by ordinary inspection.

We accordingly conclude that the doctrine of *res ipsa loquitur*—which, as the courts have often said, is "a common-sense appraisal of the probative value of circumstantial evidence"—is applicable to the case at bar and warranted the jury in finding in favor of the Plaintiffs, unless it can be said, as insisted by the Defendants, that their proof, which is undisputed, shows that the cause of the accident was not due to their negligence.

We note initially that, although some of the cases, as shown in *Hudson*, supra, use the term "inference" which permits the jury to accept or reject defendant's negli-

gence as it may choose and others "presumption" which, in the absence of contrary proof, requires acceptance, it is not necessary in this case for us to determine which is the proper terminology.

We are however required to determine the quantum of proof necessary to entitle the Defendants to a directed verdict where, under the Plaintiffs' proof, the doctrine is applicable; or to put it another way, we are required to determine whether, under all the proof of the case, the doctrine remains applicable.

An older case relied upon by the Defendants disposes of the question in a cursory manner, stating that the doctrine never applies "where the defendant goes forward with proof explaining the cause of the accident." *Granert v. Bauer*, 17 Tenn.App. 370, 67 S.W.2d 748 (1933).

A more recent case, *Hudson*, supra, explored the required quantum of proof more carefully and quoted with approval from Prosser on Torts, Second Edition. We adopt as the proper rule the language used in the Fourth Edition which is now available (at page 233):

If the defendant seeks a directed verdict in his favor, he must produce evidence which will destroy any reasonable inference of negligence, or so completely contradict it that reasonable men could no longer accept it. The evidence necessary to do this will vary with the strength of the inference. It takes more of an explanation to justify a falling elephant than a falling brick, more to account for a hundred defective bottles than for one. If the defendant proves definitely by uncontradicted evidence that the occurrence was caused by some outside agency over which he had no control, that it was of a kind which commonly occurs without negligence on the part of anyone, or that it could not have been avoided by the exercise of all reasonable care, the inference of negligence is no longer permissible, and the verdict is directed for the defendant. The *res ipsa* case has been overthrown by showing that it is not a *res ipsa* case.

But if the defendant merely offers evidence of his own acts and precautions amounting to reasonable care, it is seldom that a verdict can be directed in his favor. The inference from the circumstances remains in the case to contradict his evidence. If he testifies that he used proper care to insulate his wires, to inspect his chandelier, to drive his bus, or to keep defunct mice and wandering insect life out of his bottled beverage, the fact that electricity escaped from the wires, that the chandelier fell, that the bus went into the ditch and the bug was in the bottle, with the background of common experience that such things do not usually happen if proper care is used, may permit reasonable men to find that his witnesses are not to be believed, that the precautions described were not sufficient to conform to the standard required or were not faithfully carried out, and that the whole truth has not been told. It is of course not impossible that proof of proper care may be so overwhelming as to call for a directed verdict, but in the ordinary case it will not be sufficient to destroy the inference from *res ipsa loquitur*.

Applying this rule, can it be said that the evidence produced by the Defendants destroyed any reasonable inference of negligence, or so completely contradicted it that reasonable minds could no longer accept it? We think not. We readily concede the Defendants have explained the cause of the wheels becoming detached; but they have, in our view, failed to show that the cause was not due to their negligence. It may have been that there were internal structural defects in all of the lug bolts or in a sufficient number to cause them all to shear, and that these defects could not have been detected upon reasonable inspection. No proof however was adduced to this fact, and because the cases suggest the Defendants have the better opportunity to determine and explain the cause, the burden rests with them. Other possible explanations which have not been excluded are (1) the lug bolts became crystalized and subject to shearing because the vehicle had been

operated on prior occasions when the lug nuts were not properly tightened, (2) the lug bolts developed fissures which were readily discernable but overlooked by the Defendants' agents in changing tires and making inspections, (3) the lug bolts were weakened by overloading of the truck on prior occasions. We cannot be sure as to any of these possibilities, but we do know that either the Defendants failed to have an expert examine the lug bolts subsequent to the accident or chose not to present the results of such an examination. In view of the foregoing, we are of the opinion that under all the proof the case was properly submitted to the jury under the doctrine of *res ipsa loquitur.*

In concluding, we would point out at least one case in which the facts are practically identical to the one at bar. In *Covey v. Western Tank Lines*, 36 Wash.2d 381, 218 P.2d 322 (1950), lug bolts were sheared causing the wheels to become detached. The Supreme Court of Washington, in disposing of defendant's insistence that sufficient explanation was made of the occurrence to entitle it to a judgment notwithstanding the verdict, said (at page 327):

> . . . Appellant's explanation of the accident was that the ten studs or bolts holding the wheel had sheared off due to crystallization which could not have been discovered although adequate inspection was made. It is not disputed that the studs or bolts sheared off. But the evidence was in conflict, and left a distinct uncertainty, as to why this happened, and appellant's responsibility therefor. The testimony left a doubt as to whether the shearing off of these studs was due to loose lugs, wear on the studs, crystallization of the studs, or a combination of all three.

The Defendants raise one additional assignment of error. They contend that the proof does not justify an award of $1000 to Mrs. Swiney for loss of her husband's service and consortium because, according to their principal contention, she did not testify nor participate in the trial. In view of the proof as to the injuries and disabilities of her husband, we find this assignment of error to be without merit.

For all of the foregoing reasons, the assignments of error are overruled and the Trial Court affirmed. The costs are taxed to the Defendants and their sureties.

PARROTT, P. J. (E. S.), concurs.

SANDERS, J., dissents.

SANDERS, Judge (dissenting).

I must respectfully dissent from the holding in the majority opinion that the doctrine of *res ipsa loquitur* is controlling in this case.

Had the Defendants not gone forward with their proof and shown why the wheel came off and injured the Plaintiff, then the doctrine would have been applicable and there would have been an inference of negligence upon which a jury verdict could have been predicated.

At the conclusion of the Defendants' proof there could be absolutely no question in the mind of any reasonable man but that the accident occurred as a result of the lug bolts' shearing off of the wheel. This removed the inference applicable under the doctrine of *res ipsa* which arose from the unexplained reason for the wheel's coming off.

At this point the Plaintiff is charged with the burden of showing Defendants were guilty of some act or omission which constituted negligence proximately causing his injury. For instance, did the Defendants know, or in the exercise of ordinary care should they have known, the lug bolts on this wheel were defective to the extent they might shear off and cause injuries to a third party?

The fallacy of the rationale in the majority opinion seems to lie in the fact that it places two inferences of negligence upon the Defendants. The effect of the holding is not only that the inference of negligence existed until there was an explanation of why the wheel came off but, after it was shown that it came off because the lug bolts sheared, there then arose a second

inference that the Defendants knew, or should have known, they were defective.

In the case of *DeGlopper v. Nashville Railway & Light Co.*, 123 Tenn. 633, 646, 134 S.W. 609, 612, the court said:

"If the act which caused the injury was shown by direct evidence, and all of the circumstances of the accident were shown in the proof, and if the only reasonable explanation of the accident should give rise to an inference of negligence, then the rule of '*res ipsa loquitur*' would apply; *but there can be no foundation for the application of this maxim where both the act which caused the injury and the negligence of defendant in relation to the act must be inferred from the accident itself. You cannot well say that an act is negligent, unless you know what it is.*" (Emphasis ours.)

I cannot agree with the majority that the case of *Hudson v. Stepp*, 54 Tenn.App. 640, 393 S.W.2d 301 is controlling over the case of *Granert v. Bauer*, 17 Tenn.App. 370, 67 S.W.2d 748. In the *Hudson* case the driver testified she did not know why the car left the road. In other words, there was no explanation of what caused the accident. Had it been shown in that case that the automobile left the road because a wheel came off or because the steering mechanism failed, the doctrine of *res ipsa* would not have been applicable.

I cannot agree that it was dictum when the court said in the case of *Sloan v. Nevil*, 33 Tenn.App. 100, 110, 229 S.W.2d 350, 355:

"In this case the plaintiff offered no proof of any negligence of the defendant and if the doctrine of *res ipsa loquitur* furnished an inference of negligence *we think this inference disappeared when the defendant explained the cause of the accident as the falling down of the front of the car on the highway.*" (Emphasis ours.)

I think what the court said is a proper enunciation of the rule in this jurisdiction and we are cited to no authority in this state to the contrary.

The majority refers to the annotation of 46 A.L.R.2d, 110, as being in point with the case at bar. In that same treatise, at page 111, it says:

"The doctrine does not rest upon established facts. It does not apply where there is direct evidence as to the precise cause of the injury and all of the facts and circumstances attending upon the occurrence appear."

I also cannot agree with the majority that the case of *Smith v. Fisher*, 11 Tenn. App. 273 is not controlling in the case at bar. I can see no distinguishing difference in a brake band's "snapping" and lug bolts' shearing off, nor can I see any rational reason for applying the doctrine of *res ipsa* in the case at bar and rejecting it in the *Smith* case. The reason for distinguishing the cases seems to lie in the fact that the universal joint was concealed in the *Smith* case. It is common knowledge, however, that the base of lug bolts, where these were sheared off, is also concealed until the wheel is removed. The proof shows the wheels involved had been removed about 30 days prior to the accident. The majority opinion has the tenor of assuming the lug bolts may have been defective at that time and a negligent inspection failed to reveal it.

I am of the further opinion that the principles enunciated by Chief Justice Green in the case of *Memphis Street Ry. Co. v. Stockton*, 143 Tenn. 201, 226 S.W. 187, are applicable to the case at bar. This case involved a suit by a student motorman for personal injuries resulting from a defective brake on the streetcar. In addressing himself to the doctrine of *res ipsa loquitur*, Justice Green said:

"To state it differently, the application of this rule in its primary or distinctive sense rests on common experience, and 'not at all on the circumstances of the particular case tending of their own force to show that the very accident in question was in fact the result of negligence.' Note L.R.A.1917E, 9.

"In the first case an artificial presumption of law is employed. The second case

is really one of circumstantial evidence, although the inference justified by *res ipsa loquitur* is thrown in along with other facts proven to make out plaintiff's case.

"As stated before, no facts are proven in this record which tend to show that the street railway company had knowledge of any defect in the brake, nor is any fact proven which tends to show that the street railway company should have in the exercise of ordinary care acquired such knowledge.

"If *res ipsa loquitur* is to be employed at this angle of the case, it must be in its primary or distinctive sense.

"The question then is: May it be inferred from common experience that the bare failure of this brake to work indicated a defect which was of such a character and had existed for such a length of time as that the master knew or in the exercise of reasonable care should have known of its existence?

"How can we say that the master knew of this defect or ought to have known of it when the character of the defect itself is utterly unknown?

"An air brake is a somewhat complicated apparatus. There may be obvious defects in such machinery and there may be hidden defects therein.

"The master is not usually liable for latent defects. *Morris Bros. v. Bowers*, 105 Tenn. 59, 58 S.W. 328; Labatt on Master & Servant, vol. 3, p. 2716. Nor is the master liable for defects arising so short a time prior to the accident as not to have been discovered by him in the course of his reasonable inspections. *Box Co. v. Gregory*, 119 Tenn. 537, 105 S.W. 350; *Griffin & Son v. Parker*, 129 Tenn. 446, 164 S.W. 1142, L.R.A., 1917F, 497.

"Since we have no intimation of the nature of the defect in this brake, we think it would be a violent assumption for us to say that it was discoverable on reasonable inspection, or that it had existed for such a length of time as that the master should have known of it. The latter notion is really negatived by the

proof in the case showing that the car stopped after it left the barn on the morning of the accident to take on a passenger, at which time the brake was almost certainly used, and must have been in working order.

"It may be that rare cases will arise in which *res ipsa loquitur* can be invoked by way of raising an inference of negligent ignorance against a master in favor of his servant. We are clear, however, that under the circumstances of this case such an inference would not be permissible. We do not think it would be a safe inference in the light of common knowledge or experience."

In my view, the majority opinion is doing what Justice Green says you cannot do in the first above-quoted paragraph.

Also, let us apply Justice Green's own words to the case at bar except to substitute defendants for the master and lug bolts for the brake:

"As stated before, no facts are proven in this record which tend to show that the [*defendants*] had knowledge of any defect in the [*lug bolts*], nor is any fact proven which tends to show that the [*defendants*] should have in the exercise of ordinary care acquired such knowledge."

". . . . The question then is: May it be inferred from common experience that the bare failure of [*these lug bolts*] indicated a defect which was of such a character and had existed for such a length of time as that the [*defendants*] knew or in the exercise of reasonable care should have known of its existence?"

"How can we say that the [*defendants*] knew of this defect or ought to have known of it when the character of the defect itself is utterly unknown?"

Finally, I cannot agree that the rule quoted from Prosser on Torts has any application to the case at bar. Should this quotation be approved in the context of this case, in my view, we would be establishing an extremely dangerous precedent. We would, in effect, be saying, "Any time a third party is injured as the result of a

mechanical failure of a motor vehicle, the jury may infer negligence on the part of the owner or operator unless he can *show due care by overwhelming proof.*"

Since the proof shows affirmatively that the accident resulted from the lug bolts' shearing off and the record is devoid of evidence that the Defendants knew or, through the exercise of ordinary care, should have known they were defective, it was, in my view, error for the Trial Court not to direct a verdict in favor of the Defendants.