GREEN, Judge,
delivered the opinion of the court:
The plaintiff brings this suit to recover the sum of $1,892.60, of which $37.50 is for the use of an apparatus ■called “ shearlegs ” and $1,855.10 for repairing the defendant’s dredge Barnard, all being done pursuant to orders given by defendant’s duly authorized agent. The defendant does not dispute the item of $37.50 and admits that the repairs amounted to the sum claimed, but says that $1,588.78 thereof was expended in making repairs caused by the negligence of plaintiff. For further answer and by way of counterclaim the defendant alleges that it rented •the shearlegs of plaintiff together with the operating crew thereof, and that by reason of the carelessness and negligence of plaintiff in connection with the operation thereof its dredge was injured as stated above and it sustained damages in the sum of $29,294.85 in the expense of maintaining the dredge while repairs were being made, replacing two lifeboats crushed by the falling of the shearlegs, damage to a cast-iron bollard, and the loss of the rental value of the dredge. It will be observed that the principal issue in the ■case is as to whether plaintiff was negligent, and for the determination of this question it is necessary to consider the facts upon which this claim of negligence is based.
The apparatus called ‘‘ shearlegs ” involved in this case was a form of hoisting derrick of which a part was two beams arranged in V shape. It was used on the waterfront to lift heavy loads into vessels and was pivoted to the dock. Cables were connected thereAvith attached to a hoisting engine and so arranged that one of these cables permits the derrick to be raised or lowered and the other raises the load attached to the derrick. It appears that what is called a spud needed to be removed from defendant’s dredge Barnard and a new one installed. By direction of the Government engineer, the plaintiff furnished its shearlegs for this purpose together with its hoisting engineer, the shearlegs to be operated under the direction of the captain ■of the defendant’s dredge. The spud weighed about seven *291 teen tons. It was a vertical timber about seventy-five feet in length which was used in connection with a well in the dredge. It was pointed at one end and so arranged that it could be lowered to the bottom and thus hold the dredge in place while operating. Plaintiff’s shearlegs were built in 1919 and were kept in good condition. They were designed to lift fifty tons but had been reinforced and actually did lift boilers of sixty tons weight. Plaintiff’s engineer in charge of the hoisting apparatus bore an excellent reputation as a skillful and competent operator, having been licensed in 1918 and had successfully hoisted machinery weighing as much as seventy tons with the same shear-legs. On previous occasions he had successfully removed broken spuds from the same dredge with the same shearlegs. Before undertaking to remove the broken spud, plaintiff’s engineer oiled all the machinery connected with the shear-legs, tested the cables, examined the brake controls, felt the tension on the control levers, and satisfied himself that the machinery properly responded to the controls. When, however, the apparatus was attached to the spud and after it was hoisted into the air from the well, the shearlegs began to descend, and notwithstanding the engineer used every effort possible to stop this descent by pulling on the brake levers, the shearlegs fell over the dredge, doing the damage which subsequently was repaired, breaking a bollard and smashing two lifeboats. Subsequent to this accident, officers in the service of the defendant and the plaintiff’s president made an examination but the cause of the accident was never determined. It was believed that a rock or a small stone became lodged between the brake band and the drum which prevented the full application of the brake but there is no evidence to show that such was the case. The apparatus had never failed before.
The defendant seeks to apply to these facts the doctrine of res ipsa loquitur. The circumstances of the case up to a certain point might justify the application of the doctrine. Ordinarily where the accident proceeds from an act of such a character that when due care is taken in its performance no injury ensues from it in similar cases a presumption of *292 negligence may arise. Transportation Co. v. Downer, 78 U.S. (11 Wall.) 129. But the effect of this rule is onljr to raise a presumption and this presumption may be rebutted by evidence on the part of the defendant. The rule is subject to exceptions and the authorities are not in entire accord as to the circumstances which will justify its application. There seems to be, however, one exception as to which there is no conflict in the authorities and as to which there should be none. The rule of res ipsa loquitur “ does not dispense with the requirement that the act or omission upon which defendant’s liability is predicated be established as the proximate cause of the injury complained of.” (45 C.J,,. sec. 779, p. 1212.) In other words, while the rule permits an inference that the known act which produces the injury was a negligent act, it does not permit an inference as to-what act did produce the injury, “ and there can be no-foundation for the application of the doctrine where the physical act or thing which caused the injury is unknown or not disclosed.” Idem, citing Stewart v. Harman, 108 Md.. 446, wherein it is said that “ there can be no foundation for the application of this maxim where both the act which caused the injury and the negligence of defendant in relation to the act must be inferred from the accident itself.” To the same effect is De Glopper v. Nashville R., etc., Co., 123 Tenn. 633, 646.
It is contended on behalf of the defendant that the evidence shows that in the ordinary course of things the falling of shearlegs would not have occurred if the plaintiff had used proper care, but this in effect is contending that the mere fact of the accident shows negligence. So far as we are aware such a rule has never been applied in airy case. The defect in defendant’s case is that the evidence shows that not only were all parties at loss to explain the fall of' the shearlegs at the time of the accident, but also that even after an examination had been made of the machinery everyone was as much puzzled as before as to the cause thereof. A guess ivas hazarded that a stone or small object got in between the brake bands, but there was not the slightest, evidence to that effect and so far no one has been able to* *293 give any reasonable explanation as to what caused the shear-legs to fall. We think therefore that the rule does not apply to the case at bar.
Counsel for defendant lay special stress upon the case of Chicago, M. & St. P. Ry. Co. v. City of Tacoma, 7 Fed. (2d) 586, as to which it is urged that the facts were very similar. There is some similarity between the cases but there is an important matter of difference, for the evidence in the case last cited showed very definitely the cause of the accident and also showed that the defendant had cause to know that after the machine had been used for a long time it was subject to the particular defect which caused the injury and that this defect could only be detected by a certain kind of an inspection which was not made. We have examined the other cases cited on behalf of defendant and are of the opinion that none of them sustain the theory upon which defendant rests its case.
We think also that even if it should be held that the rule of res ipsa loquitur applied, the presumption raised thereby has been rebutted by the evidence in the case. The burden of proof under all of the authorities, notwithstanding the application of the rule, was still upon the defendant to establish negligence by a preponderance of the evidence. Negligence is the want of ordinary care, that is, of such care as an ordinarily prudent person would use under like circumstances. The evidence shows that the plaintiff’s engineer had used the apparatus to raise much greater weights. In fact, the weight to be raised in this case was light compared with the capacity of the machinery. Prior to the time when it was used to raise the spud from defendant’s dredge, this engineer had tested the workings of the levers which controlled the brake and found everything apparently in order. Nothing had occurred which gave him any notice that the machinery should be dismantled and the brake drums specially inspected, nor is there any evidence that if this had been done it would have disclosed any defect. There is no testimony showing any want of care or skill on the part of the engineer in operating the machinery. Considering the evidence as a whole we conclude that it fails to show any *294 negligence on the part of plaintiff which caused or brought about the falling of the shearlegs and consequent damage to defendant’s property. It follows that the defendant’s counterclaim is not well founded and that it is not necessary to consider the various items of damage claimed therein.
Judgment will be entered dismissing defendant’s counterclaim and in favor of the plaintiff for the sum of $1,892.60. It is so ordered.
Whaley, Judge; Williams, Judge; and Littletoh, Judge; concur.
Booth, Chief Justice, took no part in the decision of this case on account of illness.